| 12   537|
|c1151037|
|j1151039|

## SUCCESSION OF GEORGE FOULKES.

The commission of the curator of an estate cannot be calculated upon debts included in the inventory, but either fictitious in character or exaggerated in amount.

The claim of the widow under the Homestead Act of 17th March, 1852, yields to the claim of the minor whose tacit mortgage dates from a period antecedent to the passage of the Homestead Act.

The claim of the widow under the Homestead Act, is superior to all privileges created previously to the death of the husband and subsequently to the passage of the Act, except that of a vendor. Her privilege yields to funeral expenses, expenses of last illness, and law charges growing out of the administration and settlement of the succession.

It is the duty of the representative of an estate, upon the rendition of an account, to support every charge against the estate by a proper voucher.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *Durant & Hornor*, for *R. Howes*, tutor, opponent and appellant. *Benjamin, Bradford & Finney*, for curatrix.

BUCHANAN, J. The minor children of *John Foulkes*, deceased, have a legal mortgage upon the property of the deceased *George Foulkes*, who was their tutor, for the sum of six thousand and fifty-six dollars, with interest, by judgment of court; which mortgage, by the terms of the judgment, took effect from the 20th December, 1848, the day that *George Foulkes* qualified as their tutor. C. C. 354.

The widow of *George Foulkes* has rendered a final account of her administration as curatrix; from which account it appears that the estate is insolvent.

The present tutor of the minor children of *John Foulkes* opposes the three following items of the account of administration:

*First*, The item—

"*Johanna K. Foulkes*, curatrix, commission .................... $ 242 50 "

*Second*, The item—

"*Johanna K. Foulkes*, her widow's portion..................... 1000 00 "

*Third*, The item—

"Proceeds of real estate ...........................$4112 80

"Less fees and expenses of sale and notarial fees........  391 40

—————— $3721 40 "

I. Of the curatrix's commission:

Article 1187 of the Civil Code declares: "If, at the rendition of this account by the curator to the Judge, at the end of the year after his appointment, the Judge is satisfied that the succession is entirely settled, and that it is not necessary to prolong the administration, he shall allow the curator a commission of two and a half per cent. on the amount of the inventory of the effects of the succession, or of the portion by him administered, deducting the bad debts." The petition accompanying this account styles it " a final account and tableau." The commission of $242 50 charged, is 2½ per cent. on the total amount of the inventory, which is $9701 04. But it appears from the account, compared with the inventory, that there is a portion of the property comprised in the inventory, viz, cattle, estimated at $470, and a cash balance in bank of $8 17, which is not accounted for.

Again, the inventory comprises two active debts or claims of the estate, which are stated as follows:

A bill against *Mr. J. Y. Egaña* for .......................... $ 490 00

A bill against the Police Jury of Algiers, for.................. 1641 12

              The aggregate of which two claims is.............  $2131 12

But the account shows that these two claims have been collected as

    follows : From the Police Jury......................$287 47

    From *Egaña* .................................... 290 00

              Total........................  577 47

Showing an exaggeration in the inventory, of ..................  $1553 65

Now, it is not to be presumed that the curatrix collected less from these debtors of the succession than was due. Indeed, it appears from the account that one of them (the Police Jury debt) was collected by suit. It follows, therefore, that no commissions are due for the $1553 65, which was exaggerated and fictitious. For a fictitious debt is, most strictly speaking, a *bad* debt; and bad debts are to be deducted, say the Code, in calculating commissions.

We deduct, therefore, from the charge for commissions of curatrix,

1st—Two and a half per cent. on $470 00....................... $11 75

2d—Two and a half per cent. on $1553 65...................... 38 82

                                                              $50 57

And we charge the curatrix, 3d, in deduction of her commissions, with the cash balance in Bank of Louisiana not credited in the account............................................... 8 17

              Total .......................... $58 74

For which amount the first ground of opposition is sustained.

II. The evidence in regard to the circumstances of the widow and curatrix, is, that she has no property, and makes a living by sewing. She is, therefore, within the terms of the widow's Homestead Act of 17th March, 1852. But her claim under that law cannot be allowed to come in competition with that of the minors of *John Foulkes*, whose tacit mortgage dates from a period antecedant to the passage of the Homestead Act. See the case of *Taylor's Succession*, 10 Annual, 509 ; also *Milne* v. *Schmidt*, decided May term, 1857.

It is argued that the widow's privilege under the Homestead Law outranks all other privileges. But this is erroneous. Our construction of this law is, that the destitute widow's portion primes all privileges created previous to the death of the party, and subsequently to the passage of the Act of 1852, except that of a vendor : but that it yields to funeral expenses, expenses of last illness and law charges growing out of the administration and settlement of the succession. For if the contrary doctrine were held, the absurd consequence would follow, in case the movables were not sufficient to satisfy the widow's homestead and the general privileges, that the latter, being preferred over all mortgages, might be thrown back upon the proceeds of immovable property, to the prejudice of mortgagees, who yet, by the age of their mortgages, were superior in rank to the widow's homestead, and would have been preferred to it in a contest for the proceeds of the immovables.

The second ground of opposition is sustained, so far as it relates to the preference given by the account to the widow's homestead over the minors *Foulkes*.

III. The third item of the account opposed by the appellant, is the deduction made from the gross proceeds of the real estate for "fees and expenses of sale, and notarial fees, $391 40." This item is clearly inadmissible. Two bills, that of the notary who made the inventory of this estate, and that of the auctioneers who made the sales of its effects under the orders of court, are jumbled up in one lumping charge. The note of the evidence, on trial of opposition, informs us, indeed, that $250 of this charge are for account of the notary, and $141 40 for the auctioneer. But no items, no particulars, are furnished, any more on trial than in the account filed.

This is not the way that an officer of the court should account for funds entrusted to him in his fiduciary capacity. The 6th section of the Act of 1855 to regulate and define costs and fees, (Session Acts, page 163,) says: "No person shall be bound to pay any costs or fees until the officer claiming the same shall deliver to the person against whom the fees may be charged, an explicit fee bill, signed with the officer's name in full, officially, and on payment the officer shall be bound to give a receipt on said fee bill, if so required." Here we have the statutory form of a voucher for the payment of fees to officers whose fees are fixed by law, when such payment has been made by a party who is bound by law to render an account. And the propriety of enforcing that law appears in this case. For we find, by an inspection of the record, that the legal fees of the notary for the original and for a copy of the inventory, would not have exceeded thirty dollars; and that the legal commissions of the auctioneer, for selling the property of which the proceeds figure in the account, would have been about the same sum. But certified bills of particulars, which would have alone enabled us to say precisely how far this charge exceeds the rate fixed by law, are wanting.

It seems that the notary paid over to the curatrix the proceeds of sales, with a deduction of a round sum, without specifications, for his own fees and those of the auctioneer; that the administratrix received this payment precisely as it was made, and reports it, in the same form, to the court. No voucher appears in the record in the shape of a notary's bill or an auctioneer's bill of any kind. This is a palpable evasion of the law, which, if encouraged, will make the fee bill a perfect nullity. And it would be a premium upon negligence and a precedent of evil example, if we referred the case back to the administratrix for an amendment of the account in this particular.

The District Judge directs the notary's bill to be reduced *to his legal fees*, but does not say what those legal fees amount to. The record affords imperfect data for ascertaining those legal fees of the notary, and still more imperfect for those of the auctioneers. The judgment in this form can certainly never be the basis of an execution, nor do we see how we can render it more definite. It was the duty of the administratrix to have supported every charge against the estate by a proper voucher; to have made that plain which she has involved in perplexity and obscurity. Not having done so she cannot be allowed to retain the funds of the estate in her hands until she shall produce vouchers upon which we can act understandingly. This ground of opposition is sustained. See 11 An. 435.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed; that the account and tableau filed by the curatrix of of this succession be amended by reducing the commissions of the curatrix to the sum of $183 76; that the net proceeds of movables, and the moneys col-

SUCCESSION OF
FOULKES.

lected according to said account, amounting to $1308 64, be applied to the payment of the following general privileges:

1st. Funeral expenses, (unopposed, see C. C. 3160, 3161,):

| | |
|---|---:|
| Funeral | $132 00 |
| Tomb | 112 16 |
| Railing round tomb | 69 50 |

$313 66

2d. Law charges:

| | |
|---|---:|
| Costs Supreme Court | $24 20 |
| " Second District Court | 94 25 |
| " " " " | 20 50 |
| " " " " | 60 80 |
| " " " " | 58 35 |
| " " " " | 19 65 |
| " " " " | 4 50 |
| Sheriff's fees | 78 10 |
| Commissions of curatrix | 183 76 |
| Counsel of curatrix | 500 00 |
| Attorney of absent heirs | 25 00 |
| Appraisers | 16 00 |

$1085 11

3d. Expenses of last illness—doctor's bill................... 50 00

$1448 77

That the deficiency of movables to pay the general privileges above specified, being $140 13, be paid and satisfied out of the proceeds of real estate, being $4112 80; that the surplus of the proceeds of real estate, after satisfying said privileges, being $3972 67, be paid to the opponent and appellee, *Robert Howes*, tutor, in satisfaction *pro tanto* of the legal mortgage of the minors *Foulkes* upon the property of the deceased *George Foulkes*, as fixed by judgment of the Second District Court of New Orleans. It is further ordered and decreed, that the credit or deduction of $391 40, made by the curatrix for fees and expenses of sale and notarial fees, be rejected and disallowed, and that the charge of the curatrix of $1000, for widow's portion, be also disallowed, the proceeds of movables being exhausted by preferred charges above mentioned, and those of the immovables by the preferred claim of the minors *Foulkes*. It is lastly decreed, that the costs of the District Court be defrayed by the succession, and those of appeal by the curatrix, appellee.

SPOFFORD, J. The property of the succession consisted of immovables, all, of which were acquired before the passage of the widow's Homestead Act of March 17th, 1852, (p. 171,) and of movables, all of which were acquired since the passage of that law. The minors' tacit mortgage of course rested on the immovables alone.

Now suppose that, on the day of the passage of that law, and before its promulgation, *George Foulkes* had died, it is plain that, however hard we might deem the law, the funeral charges, judicial charges, expenses of the last illness, wages of servants, &c., privileged generally on movables and immovables, would have ranked the minors' tacit mortgage, and been paid out of the immovables by preference thereto, there being no movables.

It was competent for the Legislature to change the law and to create a new privilege which should surpass all others; but in the *Succession of Taylor*, 10 An. 509, we held that the widow's Homestead law was only intended to operate prospectively, that is, it did not prejudice the claims of prior creditors to be paid out of funds arising (as in that case) from the sale of property which the deceased owned prior to the passage of the Act.

The same rules of interpretation which dictated that decision compel me to the conclusion that property acquired or made after the promulgation of the Act of March 17th, 1852, should submit to the dominion of the laws in force at the time of its acquisition. Thus and thus only can the rights of all parties be harmonized.

The movables (out of the proceeds of which the necessitous widow prays to be paid her privileged claim) were the product of her husband's earnings whilst a law was in force which assured her that in case of his death the sum of $1000 should be paid to her, "in preference to other debts except those for the vendor's privilege and expenses incurred in selling the property."

I find myself unable to discover in these plain and unambiguous words any other meaning than that the Legislature intended thereafter, and out of acquisitions thenceforward made, to secure the indigent widow a little bounty in preference to every species of adverse claim, except that of the privileged vendor of the property thus acquired, and that which must arise from the cost of selling the property to pay her. Because I think they ought not to have given her a preference over funeral charges, law charges, &c. I cannot say they did not. Nor do I see that the minors are injured by the operation of a law which left their rights, as they existed at the time of its passage, intact.

I am, therefore, compelled to dissent from the judgment just pronounced.