## SUCCESSION OF THOMAS O'LAUGHLIN.

The vendor of an immovable or slave must cause the act of sale to be duly recorded, in order to preserve his privilege; if not so recorded within six days from its date, if passed in the place where the registry of mortgages is kept, adding one day for every two leagues from the place where it was passed to that where the Register's office is kept, it has, no effect as a privilege; i. e. it confers no preference over creditors who have acquired a mortgage in the meantime, which they have recorded before it; but it will still avail as a mortgage, and be good against third persons from the time of its being recorded.

With the exception of special privileges, which exist on immovables in favor of the vendor, of workmen and furnishers of materials, as declared above, the debts privileged on the movables and immovables generally, ought to be paid, if the movables are insufficient, out of the product of the immovables and slaves belonging to the debtor, in preference to all other privileged and mortgaged creditors.

The loss which may then result from their payment must be borne by the creditor whose mortgage is least ancient, and so in succession, ascending according to the order of the mortgages, or by pro rata contributions, where two or more of the mortgages have the same date.

When the debts privileged on the movables and immovables cannot be paid entirely, either because the movable effects are of small value, or subject to special privileges which claim a preference, or because the movables and immovables together do not suffice, the deficiency must not be borne proportionally among the debtors, but the debts must be paid according to the order established above, and the loss must fall on those which are of inferior dignity.

APPEAL from the Second District Court of New Orleans, *Thomas, J. Buchanan & Gilmore,* for McCloskey, appellant. *Budd & Lambert,* for curator. *E. Hunt* and *H. A. Morse,* for Mrs. Bannister. *J. Culbertson,* for absent heirs.

HOWELL, J. The curator of this succession filed a tableau distributing the proceeds of the sale of two parcels of real estate, as the only property of the succession; and, not being sufficient to pay the special mortgages and the law charges, taxes, etc., he appointed the payment of the latter, proportionally between the mortgage creditors.

Hugh McCloskey, one of these creditors, appealed from a judgment dismissing his opposition to, and homologating said account. His grounds of opposition are:

1. That the immovable property, subject to his special mortgage and vendor's privilege, is only liable to pay the charges necessary to effect the sale thereof.

2. That the curator has not used due diligence to collect the debts due

the estate, some of which are placed on the inventory as good, and should have been made available for the payment of the law charges.

3. That the lot on Roman street, being the other parcel of the real property sold, was not assessed for its first proportion of said expenses.

4. That he is entitled to certain credits for taxes and certificate of death paid by him.

5. He opposes the correctness of every item of charge or expenses upon the account, in the event that he should be held liable to pay the same.

The first and third grounds may be considered together.

The appellant bases his exemption from paying the law charges upon his vendor's privilege, and questions such privilege claimed by Mrs. Bannister, who also filed an opposition claiming the vendor's privilege, as holder of a note given for the lot on Roman street, and denies his privilege, in which, before this Court, she is joined by the curator, who contends that, being merely mortgage creditors, the expenses must be borne by the immovables pro rata, according to the price which they produced respectively.

Both acts of sale, by virtue of which the vendor's privilege is claimed, were recorded in the office of the Recorder of mortgages, after the expiration of the delay fixed by Art. 3240 C. C.; and, according to Arts. 3238, 3241, and the ruling in the case of *Porche* v. *LeBlanc*, 12 A. 778, the privilege is lost, and the creditors are entitled only to their rights of mortgage. The question is then presented, shall they contribute proportionally to the expenses, or shall the one holding the mortgage of the later date, though upon separate property, bear the whole loss, up to the amount produced by said property?

In the case of *Devron* v. *His Creditors*, 11 A. 482, this question was raised, and the decision of a majority of the Court was, that the property subject to the junior mortgage must first contribute to the payment of the privileges; and, if its proceeds do not suffice, then the next older in date, and so in succession, ascending according to the order of the mortgages.

The Court says: "Since the adoption of the Code of 1825, we do not think the point now before us has been expressly decided. The cases of *Jarvin* v. *His Creditors*, 10 L. 554; *Monbouchet* v. *Ferrand*, 12 L. 372; and *Cazeau* v. *His Creditors*, 6 R. 268, without discussing the case, seem to affirm, by implication, the decisions in the 5 Martin, 469, and 6 M. 520, decided under the old Code.

In the case of *Dreux* v. *His Creditors*, 7 N. S. 637, 640, the Court notices the change in the legislation, introduced by Article 3236, but the case itself, having arisen before the Code of 1825, was decided under the provisions of the old Code.

We consider the provisions of the Code clear and unambiguous, and that hitherto there has not been any interpretation placed upon the

Articles cited (3236, 3237,) which could weigh as an authority against what appears to us to be their obvious meaning."

In a dissenting opinion, it was said: "The reference to different mortgages, according to their date, must be taken to refer to different mortgages on the same thing. Conventional mortgages, in due form, upon different things, are of equal dignity, irrespective of their dates."

But it will be observed that Article 3236, which provides how debts, privileged on the movables and immovables generally, shall be paid, does not refer to the *dignity*, of mortgages as existing upon different things, but only to the *dates* or ages of the mortgages upon the debtor's property in general; and it directs that such debts shall, in a certain contingency, be paid out of the *product* of all the immovables and slaves belonging to the debtor, in preference to other privileged and mortgage creditors, except the vendor, the workmen, and the furnishers of materials, with privilege. And, in case any loss shall result from the payment out of this *product of the immovables*, it shall be borne first by the creditor whose mortgage is the least ancient, and then in the ascending order of time, but by pro rata contributions, where two or more *of the* mortgages (whether upon the same or different things) have the same date.

While Article 3237, in which the expression, "*of inferior dignity*" occurs, provides how these privileged debts shall bear the loss, when there is not property enough of any kind to pay all of them; and directs that these debts must be paid according to the order established in the preceding Articles in the same chapter, fixing the order in which privilege creditors are to be paid, and that the loss must fall on those debts (les creances) which are of inferior dignity.

Observing this distinction in the two articles, it is not difficult to understand the meaning of Art. 3236, and to adopt the interpretation given to it, in the opinion of the majority of the Court just quoted, which we think is now the settled doctrine on this question.

We conclude, then, that, as the mortgage under which Mrs. Bannister claims, is subsequent to that held by McCloskey, the property subject to it to the extent of its proceeds, must first contribute to the payment of the *general privileges*, before the property subject to appellant's mortgage can be required to contribute. The appellant admits his liability for the charges necessary to procure the sale of the property, subject to his mortgage.

II. As to the second ground, we can find no evidence of any diligence on the part of the curator to collect the debts, shown by the inventory to be due to the estate. We observe, in the record, an agreement that the account books of the deceased shall have come up in the original; but they are not before us, and if they were, we do not think ourselves called upon to search through them to find, nor do we suppose we could find in them proof that the debtors would plead prescription, or that interruption could not be shown. It was certainly the duty of the curator to

make some effort to collect the debts. His personal liability, with his surety, will depend upon the showing, which he may make on this point.

IV. The fourth ground of opposition is not urged in this Court, and we presume the appellant has waived it, as he retained the funds.

V. The fifth ground is an opposition to the correctness of all the charges and expenses in the account, which appear to us to be larger in proportion to the value of the estate and the mortuary proceedings ; but, as there is no evidence by which we can judge of their correctness, and the creditors who are called upon to pay them, have a right to the strictest legal proof of their correctness, we think justice requires that the case be remanded, to enable the parties, respectively, to contest and establish the charges opposed.

Courts should be careful to protect successions from waste, and require law officers to conform their charges to the legal standard.

It is therefore ordered that the judgment of the lower Court be avoided and reversed, and that this case be remanded to be proceeded in according to law, and the views thereof expressed in this opinion. The costs of appeal to be paid by the succession.