Succession of Hautau.

## No. 7593.

### SUCCESSION OF FREDERICK HAUTAU.

The executrix cannot be held liable for the difference in value between the first appraisement of succession property in the inventory thereof, and the price for which it sold under a second and third appraisement, ordered by the court, in the absence of all proof of fraud, or evidence of unfairness of price.

An account of an executrix cannot be opposed on the ground that she has not sold the succession movables, when it appears that she has debited herself with their value.

When it appears that it was necessary to employ a surveyor to make plans of succession property in order to effect their sale, the executrix will be allowed a reasonable charge for the work.

The executrix is not authorized to advertise the sale of succession property in more than one newspaper.

The fees of experts who appraise succession property at a second or third appraisement ordered by the court cannot be larger than is allowed by law to the appraisers appointed to take the inventory.

The fee-bill of the clerk of court allowed by the lower court will not be disturbed by this court when nothing is said to indicate to this court what items of the bill are excessive.

The costs of an executory proceeding against mortgaged property of succession, commenced in a court of ordinary jurisdiction before the appointment of a tutor of the minor heirs of the succession, constitute a privilege debt of the succession.

When it becomes necessary in an insolvent succession for the mortgage creditors to contribute to pay the privilege debts of the succession, the burden of the contribution falls on the junior mortgage, even in cases where the creditors have different mortgages on different properties.

APPEAL from the Second District Court, parish of Orleans. *Tissot,* J.

*A. J. Villeré* for administratrix, appellee.

*C. E. Schmidt* for Monoski, appellee.

*W. S. Benedict* for opponent and appellant.

---

A. J. Villeré, for administratrix, contended :

First—That the administratrix therefore submits that she cannot be held liable for the original appraised value of the said property, when the appraisement under which it was sold was ordered by the court, after a public crying had satisfied the lower court that the original appraisements were incorrect. Besides, the opponent has failed to show that the property was worth any more than it was sold for.

Second—That the administratrix not being liable for the original appraised value of the property adjudicated to strangers, she should not certainly be held liable for said appraisement for the property purchased by her for her homestead.

Third—That the appraised value of the furniture is accounted for by the administratrix in her account; a sale of said furniture would have

occasioned unnecessary costs. The opponent has not proved that it was worth more than the appraisement.

Fourth—That the law does not limit the publication of judicial advertisements in any particular newspaper, nor does the law designate any *official* newspaper for judicial advertisements.

Fifth—That the experts' fees are not governed by the act of 1870, p. 66, as contended for by the opponent. This act establishes a fixed and determinate compensation *for appraisers assisting the notary at the taking of inventories,* without regard to the duties more or less difficult or onerous which they have to perform. It is an act which is in derogation of common right, and should be strictly construed, and not extended to cases not falling within its letter.

Sixth—That the costs placed on the account have not been proved in the lower court to be overcharged.

Seventh—That the administratrix is entitled, at least, to the amount allowed her by the lower court for her commission, say two and one half per cent on the amount distributed; no mismanagement is shown ; she has accounted for every cent of the succession.

It is charged that the administratrix did not deposit the moneys of the estate in bank. Her testimony (T. p. 165) shows that she has not seen a cent of the proceeds of the sales.

W. S. Benedict, for opponent and appellant, contended :

First—An administratrix has no right to credit herself with inventoried value of property ; the same must be sold.

Second—An administratrix has no right to have plans made of succession property at the expense of the estate.

Third—An auctioneer making sale under order of court cannot be allowed any more for advertisements than the price he *actually* pays for such advertisement, once a week for thirty days, in one newspaper.

Fourth—The law makes no distinction between appraisers and experts in estimating succession property under inventory or otherwise. The allowance cannot exceed four dollars for each full day's time necessarily incurred.

C. E. Schmidt, for Monoski, the creditor holding the oldest mortgage, contended : 

"That the loss resulting from the payment of the general privileges in this case must be borne by the creditor holding the youngest or most recent mortgage, although the competing mortgages bear on different pieces of property, and even if the property last mortgaged had not been acquired by the mortgagor until after he had granted the mortgage first in date.

That the doctrine under the old French law, as well as under the Code Napoleon, had always been "*qui prior est tempore, potior est jure.*" That the framers of the Code of 1825 had inserted in it the article 3236 (3269), for the very purpose of making our jurisprudence harmonize with that of France, owing to the erroneous doctrine which had been laid down by our Supreme Court in 1818, in the case of Delor vs. Montegut, 5 M. 468.

As to the costs incurred in the suit of Monoski, in the Third District Court, they were taxed costs, and as such, under the rulings in Rousseau vs. Creditors, 17 L. 206, and Barkley vs. Creditors, 11 R. 28, must be classed as privileged law charges on the tableau.

---

The opinion of the court was delivered by

WHITE, J. The account of the executrix was opposed by various creditors, the principal opposition being that of Mrs. Widow Le Franz. Some of the opponents withdrew their complaints before trial, which resulted in a judgment rejecting in the main the pretensions of Mrs. Le Franz, from which she appeals.

We will notice only those questions, twelve in number, urged in the brief of counsel:

First. That the executrix is liable for the difference in value between the first appraisement of the property and the price for which it sold. The succession was opened in the month of December, 1878, and by the inventory, which was taken on the sixteenth of that month, the appraised value of the real estate was $11,300. Subsequently, in March, upon representing that there was a mistake in the first inventory, caused by the lines of the lots being erroneously mentioned, the court ordered a new appraisement and appointed experts for that purpose. The property, it seems, was before this new appraisement examined by a surveyor, who made plans of it, by which it was redescribed and revalued on the 3d March, 1879, for $9800. This re-appraisement was made pending an advertisement of the property for sale, the terms as fixed by the order of court being one half cash, and the remainder at one and two years credit. In accordance with the advertisement, the property was offered on the 11th March, and only one piece was sold, in consequence of the inadequacy of the bids; the one sold having been bid in by the executrix for her own account at the price fixed by the second appraisement, which was two hundred dollars less than the first valuation. The executrix then prayed a second appraisement, averring that the valuation was so high that the property could not be sold under it. The property was under order re-appraised at $4200, and was re-advertised, the terms being one third cash, and the balance at one and two years, and was sold on the 19th April for $5535. We are at a loss to

understand under this state of facts upon what principle the opponent expects to recover from the executrix the difference between the amount of the sales and the sum of the first appraisement. The second appraisement was rendered necessary by the error of description in the first inventory. Even granting the irregularity of the third, such state of things would not make the executrix personally liable in the absence of all proof of fraud or evidence of unfairness of price. The opponent does not attack the sales; on the contrary, ratifies them, and yet seeks to recover more than the price, upon the theory that the property did not bring an adequate price, although the price equaled the estimated value of the last appraisement.

Second. That the executrix should be charged with $412 47 rent collected, or which should have been collected. The court below found that the sum of $22 ought to be debited under this item, and a careful scrutiny of the testimony satisfies us as to the correctness of its conclusions.

Third. That the executrix has not sold the movables, but has charged herself with their inventoried value, $99. The court below finding that there was no proof of the inadequacy of the valuation in the inventory, and considering that this item had not been insisted on, overruled it. We think with the court below that there is no proof that the valuation in the inventory was unfair. We do not, however, consider that the executrix could become the owner by simply debiting herself with the price.

Fourth. De Armas' plans, forty dollars, claimed as improperly allowed. The second description and re-appraisement was made on plans drawn by this surveyor. They were averred to be necessary in consequence of the irregularity of the lines ; by them the property was redescribed, re-appraised, advertised, and adjudicated. Under this condition of things, whatever may be ordinarily the right of an executor to incur the expense of making plans, we think the charge, which is shown to be reasonable, was properly allowed.

Fifth. The following items are objected to : Advertising, Times, $71 40 ; Picayune, $71 40 ; German Gazette, $26 60 ; posters and posting, $10. The court below reduced the amount as follows : Times, $35 70 ; German Gazette, 13 30 ; Picayune, $35 70 ; the charge for posting was allowed. There is before us no prayer for the amendment of the judgment, and the only question is, were the amounts properly allowed. The proof shows that the expenses for posting is usual, and was actually incurred. For the advertisements, the sum allowed by the lower court is less than the legal rate, the complaint before us being that the advertisements were inserted in more than one newspaper. The proof is that the advertisements were actually inserted by the auctioneer

by order of the executrix, and the sums allowed were by him disbursed. It may well be that the insertion in more than one paper was of advantage to the estate. The law has, however, pointed out that legal advertisements are to be inserted in a "daily paper." Acts of 1878, p. 157. We cannot, therefore, allow for the publication in more than one daily paper. These items should, therefore, have been reduced to $35 70, for which sum the executrix was entitled to credit.

Sixth. Four charges of twenty dollars each were allowed as fees to the experts who made the second and third appraisements. The lower court sustained the charges, on the theory that as the parties were not the appraisers appointed to take the inventory, their fees were not, therefore, governed by the law regulating those to be charged by appraisers. We are unable to grasp the distinction. The parties were certainly appraisers of succession property, and were appointed as such. The law fixes such fees at four dollars per vacation; there was one vacation, as is shown by the inventory, and one in making the re-appraisements. The sum of eighty dollars should be reduced to sixteen; that is four dollars for each of the appraisers for each appraisement.

Seventh. Clerk's costs, $45 05, is opposed as being illegal. Counsel in their brief say that an examination of the fee-bill will disclose that this item is excessive. Nothing is said to indicate what items are excessive, and as the judge below allowed the amount, and no particular items are called to our attention, we will not disturb the judgment below. We cannot be expected to analyze and examine each and every item of a fee-bill where the parties or their counsel have not thought proper to do so.

Eighth, ninth, and tenth. Clerk's costs, Third District Court, $22. Gauthreaux, sheriff, $9 50; J. Meunier, $15. These items result as follows: Monoski, a mortgage creditor of the deceased, before the appointment of a tutor to the minors commenced proceedings *via executiva* to enforce his claim. The minors being unrepresented, a tutor *ad hoc* was appointed, and his fees, as well as the costs above mentioned, after being taxed were placed on the account as a privilege debt of the estate. They were correctly so placed. Rousseau vs. Creditors, 17 L. 206; Barkley vs His Creditors, 11 R. 28. So far as the amount of the clerk's bill is concerned, it is covered by what we have previously said.

Eleventh. The claim of the executrix for commissions, $284 97, was opposed as excessive, and because no commissions were due her, in consequence of maladministration. The court below, considering that no maladministration had been shown, did not reject the claim *in toto* but reduced it to $163 37, the reduction having been brought about by calculating the commission on the amount of the last appraisement.

Whether the reduction was or not correctly made, is not before us for review, no amendment of the judgment having been asked. We agree with the court below in thinking that the charged maladministration has not been proven. The charge of failure to deposit money in bank is, we think, removed by the fact that no money came into the hands of the executrix, unless it be the small sum collected for rent, to which we have previously adverted.

Twelfth. There were three mortgage creditors; the succession was insolvent, and it was necessary that one of them contribute to pay the privileges. The account placed the burden of so doing on the junior mortgage. It was properly so placed. Devron vs. His Creditors, 11 A. 482; Deverges vs. His Creditors, 18 A. 169; Succession of O'Laughlin, 18 A. 142; Ventress vs. Creditors, 20 A. 359; Succession of Rousseau, 23 A. 3; Succession of Marc, 29 A. 414. It is now said that the rule enunciated by the current of authority does not apply, because the creditors had different mortgages on different properties; the argument is answered by the authorities quoted. True, Devron's case was decided by a divided court, but the doctrine taught by it has been followed by too long a line of precedents to render a re-examination either necessary or proper. It is urged that this case does not fall within the rule, because the property upon which the junior mortgage rests did not belong to the debtor at the time the other property was mortgaged. The fact upon which the distinction is predicated is not sustained by the record; if it were, it would not be sufficient to take this case out of the rule first applied in Devron's case, and since uniformly followed. That rule results from applying the maxim " *Qui prior est tempore, potior est jure.*" The test is not the date of the acquisitions, but of the mortgages. The reasoning of the court in the succession of Rousseau seems to us conclusive of this issue.

It is therefore ordered, that in so far as the judgment below allowed for advertisements the sum of $84 70, it be reduced to $35 70; and that the amount allowed the experts be reduced from $80 to $16; that the credit of $99 for the furniture be disallowed, and the executrix be ordered to sell the furniture as required by law. That in all other respects the judgment be affirmed, with costs in both courts, in favor of opponent.