(38 South. 690.)

No. 15,591.

Succession of PETERS.

(May 22, 1905.)

ADMINISTRATION—CREDITORS OF SUCCESSION—ORDER OF PREFERENCE—EXECUTOR'S ACCOUNT—HOMOLOGATION—REVIEW.

1. The law provides that the claim of the widow or minor in necessitous circumstances "shall be paid in preference to all other debts, except those for the vendor's privilege and those incurred in selling the property," but it does not otherwise affect the order of preference in which the creditors of a succession are to be paid, and, after such claim has been so paid, the claims to which inferior privileges are accorded should be paid in the order established by law, and should not be subjected to horizontal or pro rata contribution, levied without regard to rank.

2. The judgment of a district court homologating an account of an executor will not be reversed for the correction of a trifling error, not spec-

ified by opposition, and the correction of which would entail expense upon others. without benefit to the appellant.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

In the matter of the succession of Ernest F. Peters. Judgment homologating the account and dismissing the opposition of John Baumer, who appeals. Affirmed.

Albert Voorhies and Sidney F. Gautier, for appellant. Dinkelspiel & Hart, for appellee civil sheriff of the parish of Orleans. Pierre Adolph Ducros, for accountant and other appellees.

## Statement.

MONROE, J. The deceased died in April, 1904, leaving a widow, whom he constituted his universal legatee and executrix, one minor child, and other children, and a small estate in community, consisting of a piece of real estate on Elmire street, valued at $2,000, and mortgaged for $1,000, with interest, another piece on Dauphine street, valued at $1,600, upon which there were two mortgages, aggregating $750, with interest, and household effects valued at $82. The widow, having qualified as executrix, obtained an order for the sale of the real estate to pay debts, but, before the day fixed for the sale, John Baumer, holding the junior mortgage thereon (for $500), obtained an order for the seizure and sale of the Dauphine street property by executory process, whereupon the executrix abandoned her attempt to sell that property, and intervened in the executory proceeding, with the result that the latter was cumulated with the succession proceedings, and the product of the sale was subjected to her administration. The Elmire street property brought $1,335, and the Dauphine street property $1,710, which latter amount, after paying $345.27 in satisfaction of the claim, with accumulated interest, of a creditor holding first mortgage on the property, the purchaser turned over to the sheriff. In September, 1904, the executrix filed her account, which may be summarized as follows:

| | | |
|---|---|---|
| Proceeds of sale of Elmire St. property..... | | $1,335 00 |
| Proceeds of sale of Dauphine St. property (in h'ds sheriff)...................... | | 1,710 00 |
| Rents collected ................................. | | 17 50 |
| Movable property as per inventory.......... | | 82 00 |
| Total ...................................... | | $3,144 50 |

| | | |
|---|---|---|
| 1st mortgage debt Dauphine St. property paid by purchaser....... | $ 345 27 | |
| Cost of selling Dauphine St. property, including taxes paid........ | 222 03 | |
| Costs of selling Elmire St. property ................................... | 122 10 | |
| Other costs (including attys. fees, notary fees, and comm. of exctr.) | 293 55 | |
| Claim of widow & minor in necessitous circumstances ........... | 1,000 00 | |
| Payable as follows: | | |
| Household furniture & movables as per inventory ..................... $ 82 00 | | |
| Parlor set described in inventory as donation to widow from son now deceased ................. 20 00 | | |
| Balance in cash.......... 898 00 | | |
| $1,000 00 | | |
| Funeral expenses: | | |
| Undertaker's bill .......... $100 00 | | |
| Metairie Cemetery bill..... 130 00 | | |
| | 230 00 | |
| Expenses of last illness ............ | 25 00 | |
| Germania Savings Bank, debt secured by mortgage on Elmire St. property, $1,000, with int. at 8% from March 13, 1904, takes the balance ............................. | 906 55 | $3,144 50 |

This statement of account is followed by a memorandum to the effect that John Baumer, holding junior mortgage on Dauphine street property for $500, and Charles Lehman, an ordinary creditor for $150, get nothing.

The account thus presented was opposed by T. Doyle, undertaker, who alleged, amongst other things, that he was entitled to $103, and by John Baumer, who, in general terms, opposed most of the items on the debit side. He opposed the items $82 and $20 on the ground that the effects represented by them still belong to the succession, and the item of $345.27 on the ground that it was not due, and that, in any event, it should contribute to the payment of the $1,000 to be paid to widow and minor, should that amount be allowed. On the trial, it was ad-

mitted that the undertaker's bill should be increased to $103. It was either admitted or proved that, as to the figures, the other items of the account were correct; and it was proved that the widow and minor have nothing save $20 worth of furniture and the commission claimed by the widow, as executrix, amounting to $92.05. There was judgment allowing the undertaker an additional $3, and dismissing the opposition of John Baumer, who alone appealed.

### Opinion.

Counsel for appellant say in their brief:

"The property specially mortgaged to appellant is liable to the discharge of the $1,000 [claimed by the widow and minor], while the other property, mortgaged to appellees, is equally liable by operation of law. So are the movables, also. Each of these must contribute in proportion to its value or proceeds, and when this charge, by operation of the law, is satisfied, then the concursus between the creditors, inter sese, takes place. The judgment on appeal fastens the responsibility on one property, practically, and frees from it the other. This is obviously wrong."

We do not so understand the law, which declares that the claim of the widow or minor in necessitous circumstances "shall be paid in preference to all other debts, except those for the vendor's privilege and those incurred in selling the property," and does not otherwise affect the order of preference in which the creditors of a succession are to be paid. The claim of the widow or minor is, therefore, to be paid as one to which the law accords a particular privilege on both movables and immovables, and, when it shall have been so paid, the claims to which inferior privileges are accorded are to be paid in the order established by law, and are not to be subjected to the horizontal, or pro rata, contribution, levied without regard to rank, suggested by the learned counsel. The mortgage held by the appellant is the least ancient with which the property of the succession was affected, and the law reads:

"With the exception of special privileges which exist on immovables in favor of the vendor, of workman and furnishers of materials, as declared above, the debts privileged on the movables and immovables, generally, ought to be paid, if the movables are insufficient, out of the proceeds of the immovables belonging to the debtor, in preference to all other privileged and mortgage creditors. The loss which may then result from their payment must be borne by the creditor whose mortgage is least ancient, and so, in succession, ascending according to the order of the mortgages or by pro rata contributions where two or more mortgages have the same rank." Civ. Code, art. 3269.

Nor does it affect the question that the different mortgages rest upon different pieces of property. The junior mortgage must pay the privileged debts. Succession of Hautau, 32 La. Ann. 59. Inasmuch, therefore, as all of the claims recognized by the executrix appear to prime that of the appellant, he has no just cause of complaint, unless it should appear that those claims, or some of them, are unfounded in fact or are not entitled to the rank to which they have been assigned, and in this connection there are but few items which have been made the subject of criticism. Counsel for appellant object to the item of $130, allowed in favor of the Metairie Cemetery Association, the fact being that the ground in which the remains of the deceased were subsequently interred was purchased three days before his death for $140, of which $10 was paid in cash, the balance being represented by the item in question. The objection seems to be that no written title passed, and that no privilege exists for the balance of the price. The evidence shows that the burial place was acquired in accordance with the rules and custom of the association, agreeably to which no title is made until the entire price is paid; and the privilege is not asserted or recognized as a vendor's privilege (since the property has not been, and probably will not be, sold in this succession), but as a privilege resulting from the fact that the debt was necessarily incurred for the burial of the deceased. It is suggested in the brief that it is not explained why two lots were purchas-

ed, instead of one, and that it is not proved that the remains of the deceased were buried in both lots. This is true, and, if any benefit could result to the opponent, it might be worth while to inquire more particularly into the matter. But it is quite certain that it was as necessary to the funeral that a final resting place should be provided for the remains as that any other provision should be made, and it is shown that the resting place so provided was and is the ground in question, and that the remains of the deceased are now resting there. Moreover, if we should hold that the expense incurred was greater than necessary, and should reduce it by, say, one-half, it would do the appellant no good, since the difference would inure to a creditor who will not be paid in full by $123.20 (Germania Savings Bank), and whose claim is of higher rank than that of the appellant.

It is further objected that the widow had no right to appropriate the movables to the satisfaction of her and the minor's claim. Strictly speaking, she had not. The movables in question, however, consisted of a few household effects, the whole appraised at $82, at which valuation, as she testified on the trial of the opposition, they were taken by the widow in part payment of her claim of $1,000, and there was no suggestion then, and there is none now, that anything more would have been realized if the property had been sold at auction. Under these circumstances, whilst we are not disposed to encourage irregularities in the administration of successions, we do not think the ends of justice would be subserved by attempting to rectify an error so technical and trifling, the more especially as the attempt would, in all probability, result in a loss to other creditors of the succession, and would be of no advantage to the creditor who complains. Code Prac. art. 15.

Counsel for the executrix discusses her right to receive a commission in addition to the $1,000.00, claimed by her and refers us to the case of Succession of Forstall, 39 La. Ann. 1058, 3 South. 277, as sustaining the affirmative of the proposition. The case does not seem to us to be in point, and, as the counsel for the appellant do not refer to the matter, either in the opposition or the brief filed on behalf of their client, we prefer to express no opinion concerning it.

Judgment affirmed.