LAND, J.
It appears that Lewis Campbell .died in the year 1904 in the parish of Vermillion, leaving a small estate and a widow and minor children in necessitous circumstances.
The succession was insolvent. The administrator filed a tableau of distribution, proposing to pay taxes, expenses of selling the property, and law charges, aggregating $267.23, and then to apply the remainder of the funds in his hands amounting to $771.02 to the payment of the homestead claim of the widow and minor heirs of the deceased. A claim of $193.50 for medical services during last illness was allowed and classed on the tableau as inferior in rank to the claim of the widow and minors. The physician filed an oppostion to said tableau, alleging that his privilege was superior in rank to that of the widow and minors. There was judgment homologating the tableau as filed, and the opponent appealed to the Court of Appeal for the parish of Vermillion.
Upon the case as stated the judges of the Court of Appeal, finding a decided conflict in the jurisprudence of this state, have certified to us the following question, to wit:
“Which should be paid by preference, the homestead claim of the widow and minors as carried on the tableau, or the claim of the physician for service rendered the deceased during his last illness?”
We are indebted to the district judge for his very thorough and able review of the legislation and jurisprudence on the subject-matter submitted to us for determination.
The act of March 17, 1852, provided that, whenever the widow and minor children of a deceased person should be left in necessitous circumstances, they should be entitled to demand and receive from the succession a sum, which added to the amount of property owned by them or either of them in their own right would make up the sum of $1,000, said amount to be paid “in preference to all other debts, except those for the vendor’s privilege and expenses incurred in selling the property.” Laws 1852, p. 171, No. 255.
This act was embodied substantially in *532 article 3252 of the Revised Civil Code of 1870, treating of privileges on movable and immovable; and article 3254, treating of the order in which general privileges are to be paid, was amended by adding the following paragraph, to wit;
“The thousand dollars secured by law to the widow or minor children, as set forth in article 3252, shall lie paid in preference to all other debts, except those for the vendor’s privileges and expenses incurred in selling the property.
The words “all other debts” are in themselves broad enough to cover the “debts” which the article declares shall be paid in a certain order of preference, and their application to privilege debts is shown by the exception of vendor’s privileges and expenses of sale. To hold that the words “all other debts” do not include the “debts” specified in article 3254 would be to subordinate the claim of the widow and minors, not only to funeral expenses, law charges, and expenses of last illness, but to “wages of servants,” “supplies of provisions,” and “salaries of clerks, secretaries, and others of that nature.” And as special privileges as a general rule, prime general privileges, the claim of the widow and minors would be, under such a construction, reduced to a mere priority over ordinary creditors.
It seems evident that the words “all other debts” include all privileged debts or none at all. That all such debts were intended is shown by the special exception of two classes of privileged debts. The general rule must necessarily include things of the same class as those excepted from its operation.
The confusion in our jurisprudence originated in the decision in the case of the Succession of Foulkes, 12 La. Ann. 537, rendered by a divided court. In that case the conflict was between the widow claiming the benefit of the homestead act of 1852 and certain minors holding a tacit mortgage antedating the passage of the act. The court held that the widow’s claim could not come in competition with the claims of creditors which existed prior to the passage of the act; citing Succession of Taylor, 10 La. Ann. 509. The opinion shows affirmatively that the “funeral expenses” were “unopposed,” and contains no statement that any opposition was made to the “expenses of last illness” or to the “law charges,” other than to the commission claimed by the euratrix. The court, however, having subordinated the privilege of the widow to the tacit mortgage, proceeded to consider the relative rank of the expenses and charges above mentioned and the widow’s homestead privilege as follows, to wit;
“It is argued that the widow’s privilege under the homestead law outranks all other privileged. But this is erroneous. Our construction of this law is that the destitute widow’s privilege pilmes all privileges created previous to the death of the party, and subsequently to the passage of the act of 1852, except that of a vendor; but that it yields to funeral expenses, expenses of last illness, and law charges growing out of the administration and settlement of the succession.”
The reasons given by the court are as follows, to wit;
“For, if the contrary doctrine were held, the absurd consequence would follow, in case the movables were not sufficient to the' widow’s homestead and the general privileges, that the latter, being preferred over ail other mortgages, might be thrown back upon the proceeds of of immovable property, to the prejudice of mortgagees, who yet, by the age of their mortgages, were superior in rank to the widow’s homestead.”
This reasoning ab inconvenienti was applicable to the particular case before the court, wherein a mortgage on account of its date was held to be superior to the widow’s privilege, but is not applicable to this or any other ease where no such consequence would follow. Spofford, J., dissefited, holding that the plain and unambiguous words of the statute evidenced the legislative intent to secure to “the indigent widow a little bounty in preference to every species of adverse claim, except that of the privileged vendor of the property thus acquired, and that which must arise from the case of selling the property to pay her.”
*533 In the Succession of Cottingham, 29 La. Ann. 669, the contest was between the widow in necessitous circumstances and a creditor claiming a preference by reason of his having procured the cancellation of a fraudulent mortgage. The widow complained in the lower court that while her claim should be paid by preference over all other debts, except those specially mentioned in the statute, the administrator had classed it as the last privilege to be paid. The opinion states that th.e opposition of the widow was sustained and that of the creditor dismissed, and that the latter alone appealed. The judgment of the lower court was affirmed; the court holding that 'the widow’s claim was superior to that of the opposing creditor. Yet, in the opinion rendered, the relative rank of the widow’s claim and certain general privileges was discussed as follows;
“The widow’s claim surpasses in legal dignity, not only conventional mortgages, but even the privilege securing the payment of the expenses of the last illness and of the funeral charges. Where, as in this instance, she takes the whole of the succession, she must out of the bounty allowed her pay these expenses and charges. This on her part is more than a duty, it is an obligation.”
Manning, C. J., dissented from this doctrine, but concurred in the decree for the reasons stated in Succession of Eoulkes, 12 La. Ann. 537, which were practically overruled and discredited in the majority opinion, which held that the “privilege conferred on the widow and children in necessitous circumstances is superior to all other privileges, except that of the vendor and those incurred in selling the property.” The court, though if was obiter, expressly recognized the superiority of this privilege over expenses of last illness and funeral charges, and consequently what was said as to the duty or obligation of the widow to pay the same must be considered as referring to a natural obligation to do so, binding only in foro conscientise. It cannot be assumed that the court intended to affirm and deny a legal right in the same breath.
' In no other cases has the precise issue now before the court been considered, but in a number of cases the court has announced the general doctrine that the widow’s claim outranks all privileges, except that of the vendor and the expenses of selling the thing. Quertier & Co. v. Hille, 21 La. Ann. 429; Succession of Heitzler, 25 La. Ann. 116; Durac v. Ferrari, 26 La. Ann. 116; Succession of Rawls, 27 La. Ann. 560. In Succession of Neguelona, 52 La. Ann. 1500, 27 South. 964, the court, in discussing the rank of the vendor’s privilege on immovables, said that the claim of the necessitous widow “is to be paid in preference to all other debts — those of the succession, as well as those of the deceased — except those for the vendor’s privilege and expenses incurred in selling the property.” In a recent case decided by this court the claim of the widow was ordered “to be paid out of the succession funds in preference to all other debts, except those for the vendor’s privilege and the expenses of selling the property.” Succession of Duplain, 113 La. 786, 37 South. 755. And in one more recent the distribution was made on the same basis of preference. Succession of Peters, 114 La. 952, 38 South. 690.
The confusion and conflict in our jurisprudence on this subject has arisen from the failure to recognize and enforce the plain meaning of the statute. To subordinate the claim of the necessitous widow, not only to funeral expenses, hut to expenses of last illness and law charges, would in many cases throw her and her children penniless on the cold charity of the world, and thereby defeat the very object of the statute. Where the law makes no exception, courts should make none, and when the words of the law are clear and free from all ambiguity “the letter of it should not be disregarded under *534 the pretext of pursuing its spirit.” Civ. ■Code, art. 13.
We therefore hold that the claim of the necessitous widow is superior in rank to the claim of the physician for services rendered to the deceased during his last illness, and •so instruct the judges Of the Court of Appeal.