O’NIELL, J.
Richard McCall died on the 15th of May, 1913, and his succession was regularly opened in the parish of Ascension, the parish of his domicile, and was administered by the testamentary executor. The property of the succession in the parish of Ascension consisted of MeManor plantation, which was appraised at $85,000, and five horses, appraised at $250. The succession also owned, in the parish of Iberville, a tract of swamp land containing 1,980 acres, which was appraised at $3,960, and another tract of land containing 159.80 acres appraised at $319.60. The total appraised value of the property of the succession, therefore, amounted to $89,529.60.
There was a crop of sugar cane growing on MeManor plantation when Mr. McCall died, which the executor cultivated and harvested, but the proceeds of the crop scarcely paid the cost of its cultivation, harvesting, and marketing.
The succession being insolvent, the widow renounced the community, and the son and only heir renounced the succession.
There was a mortgage on MeManor plantation to secure a debt of $25,000, due by the deceased to the mother of the testamentary executor, and a mortgage on the 1,-980 acres of swamp land in Iberville parish in favor of Putnam & Norman, Limited, the present appellants, securing a note signed by Richard McCall and held by Putnam & Norman, Limited, for $6,000, dated the 12th of March, 1913, and payable on the 2d of January, 1914, bearing interest at 8 per cent, from maturity.
On the 29th of December, 1913, about seven months after the death of Mr. McCall, the executor presented a petition to the judge of the district court, and obtained an order for the sale of the tract of 1,980 acres of swamp land in the parish of Iberville, to pay the debts of the succession. On the same day, the mother of the executor proceeded via executiva to foreclose her mortgage on MeManor plantation, and obtained from the court an order for a writ of seizure and sale. The swamp lands situated in the parish of Iberville were advertised in a newspaper published in the parish of Ascension to be sold on the 7th of February, 1914, under the order of sale obtained by the executor to pay the debts of the succession.
It must be observed that the order of court obtained by the testamentary executor to sell the swamp land in Iberville parish to pay the debts of the succession, and the order of seizure and sale obtained by the executor’s mother to sell MeManor plantation in the foreclosure of her mortgage, were obtained only four days before the day of maturity of the mortgage note held by Putnam & Norman, Limited. On the next day after the maturity of the note of $6,000, held by Putnam & Norman, their attorneys, in the city of New Orleans, prepared a petition to foreclose the mortgage on the swamp land in Iberville parish by executory proceedings. One of the attorneys of Putnam & Norman, Limited, then went to Donaldsonville, the parish seat of Ascension parish, on the 4th of January, to obtain certain information from the record of the succession of Richard McCall, to be embodied in his petition for the executory proceedings which he had prepared to file in the district court of the parish of Iberville; and he was surprised to learn that the executor had obtained an order to sell the swamp land in Iberville parish, and that the mother of the executor had obtained an order for the seizure and sale of MeManor plantation to satisfy her mort *91 gage. Tile attorneys of Putnam & Norman, Limited, then proceeded by a rule on the executor to show cause why the order of sale of the swamp land situated in the parish of Iberville should not be rescinded. The rule was filed on the 7th of January, 1914, and contains the following allegations, inter alia, viz.:
“That the object of the said Emile Legendre, testamentary executor, in obtaining an ex parte order of sale in the succession, without notice to petitioner, just two days before petitioner’s mortgage became due, was to attempt to subject the property specially mortgaged to secure petitioner’s claim to the payment of succession charges, including executor’s commissions, and that the action of the said Emile Legendre in the premises was not only prejudicial to petitioner’s rights as holder of a special mortgage under the pact de non alienando, but was also discriminatory in this: That the said Emile Legendre did not obtain a similar order of sale in the succession for the McManor plantation, belonging to the estate. That the said McManor plantation was likewise subject to a special mortgage, not held, however, by petitioner, but held (in part) by Widow Anais Armant Legendre, the mother of tlie said Emile Legendre, the executor. That the said Emile Legendre did not make any attempt to have the said McManor plantation sold in the succession, but, on the contrary, on the very day on which he obtained an order for the sale in the succession of the property mortgaged to petitioner, the said Emile Legendre permitted his mother to sue out executory process outside the succession on her special mortgage on McManor plantation, as will appear by reference to the proceedings on file on the docket of this honorable court, entitled Widow 'Anais Armant Legendre v. Emile Legendre, Executor, filed December, 29, 1913.
“That the result of the course adopted by the executor, if permitted to stand, would be to permit the McManor plantation, which constitutes the bulk of the assets of this succession, to escape entirely from any responsibility for the costs, and charges of the succession, including executor’s commissions, and to saddle' all of those costs, charges, and expenses upon the propei-ty subject to petitioner’s mortgage, which is relatively of little value, as will appear by reference to the inventory in the succession proceedings, and which would therefore be entirely consumed by those costs, charges, and expenses, leaving nothing whatsoever to pay petitioner. That this result would be an unfair discrimination against petitioner and in favor of the Widow Legendre, the mother of the testamentary executor, the more unwarranted in law because petitioner has proceeded with the utmost diligence, immediately upon the maturity of the note which he holds, while the notes held by the Widow Legendre have been long past due.
“That any such result would be, as expressly declared by the Supreme Court of this state, a deprivation of petitioner’s contract rights, since the debtor’s heirs and his creditors cannot, by the death of the debtor, acquire greater rights, privileges or immunities than he himself possessed ; and such a result would, amount to an impairment of the obligation of petitioner’s contract with the debtor, and to a taking of petitioner’s property without due process of law, in violation of the Constitution of this state and of the United States.
“That under all the circumstances above detailed, and under the repeated decisions of the Supreme Court, the ex parte order granted to the executor upon his application, without notice to petitioner, on December 28, 1913, directing the sale of the property subject to petitioner’s special mortgage in the succession proceeding^, was granted without notice to or knowledge in the court of all the circumstances or all the rights of petitioner, and should be set aside, annulled, avoided, and vacated.”
In answer to the rule, the executor denied and put at issue all of the material allegations of fact; and, assuming the position of a plaintiff in reconvention, alleged that, as executor of the succession of Richard McCall, he had deposited in the hands of Putnam & Norman, Limited, the sum of $20,989.46, which remained to the credit of the succession. He prayed that the demand of the plaintiff in rule be rejected, and that he, the executor, have judgment on his reconventional demand for $20,989.46. On the trial of the rule, the executor’s counsel announced that he proposed to prove the reconventional demand, which the court refused to permit in the summary proceedings; and it appears that the executor’s counsel have acquiesced in the ruling.
Judgment was rendered, denying the relief demanded by the plaintiff in rule, reserving to the defendant executor the right to assert in proper proceedings the claim he had made in his reconventional demand. The plaintiff in rule has appealed.
The principal reason assigned by the district court for dismissing the rule was that he saw no reason why the proceedings for the sale of the swamp land in Iberville par *93 ish should, be stopped and new proceedings begun; that the property would have to be sold eventually ; and, the proceedings having progressed so far, it would only occasion delay, increase the costs, and complicate the proceedings, to rescind the order of sale. He declared that the various claims would have to be determined, and might as well be done in one proceeding, if possible.
The executor’s counsel argue that it was his imperative duty to sell the real estate'belonging to the succession to pay the debts, because the succession- had no funds or movable property with which to pay them. They admit that the law charges, such as the executor’s commission, the fees of the attorneys who have represented him in the succession, etc., must be paid from the proceeds of the sale of the real estate belonging to the succession ; but they argue that the appellant cannot complain if these law charges, secured by a superior lien on all of the property of the succession, consume the proceeds of the swamp land in Iberville parish that is mortgaged to the appellant, because, the defendant’s counsel argue, the mortgage in favor of Putnam & Norman, Limited, on the swamp land in Iberville parish being of later date than the mortgage in favor of the executor’s mother, bearing on McManor plantation, the proceeds of the sale of the property affected by the junior mortgage must be used as far as may be necessary for. the payment of the law charges, before applying any of the proceeds of the sale of McManor plantation, affected by the senior mortgage. They rely upon the construction put upon article 3269, ft. O. O. (C. C. 3236), first in the case of Devron v. His Creditors, 11 La. Ann. 482, and affirmed in the Succession of O’Laughlin, 18 La. Ann. 142, and in Deverges v. His Creditors, 18 La. Ann. 169, Succession of Rousseau, 23 .La. Ann. 1, Succession of Marc, 29 La. Ann. 412, Succession of Hautau, 32 La. Ann. 54, Succession of Henry, 45 La. Ann. 160, 12 South. 365, and Smith Bros. & Co. v. Athens Lumber Co., 49 La. Ann. 666, 21 South. 854.
It must be observed, however, that the property which the executor proposes to sell to pay the debts of the succession secured by a superior lien or privilege has an appraised value of only $3,960, and is mortgaged to Putnam & Norman, Limited, to secure $6,000, while the McManor plantation has an appraised value of $85,000, and, as far as the record discloses, is mortgaged to secure only $25,000. It was not possible for the district judge to know, from the evidence introduced on the trial of this rule, whether McManor plantation would sell for more than the amount of the mortgage in favor of the executor’s mother. That is probably what was meant by the expression in the opinion of the district court that the rank of the various claims would have to be determined in the settlement of the succession.
The mortgage in favor of Putnam & Norman, Limited, affecting the tract of swamp land in the parish of Iberville, is an authentic act, imports confusion of judgment, and contains the usual stipulation that the property shall not be alienated or incumbered to the' prejudice of the mortgagee.
Our opinion is that the ruling of the district court in this case is in conflict .with the doctrine of the marshaling of assets and securities, as announced in the Succession of Anger, 36 La. Ann. 252; and is in conflict with the decision in Succession of Thompson, 42 La. Ann. 118, 7 South. 477, and in Succession of Loeper, 105 La. 772, 30 South. 131.
The succession of Anger owned two separate plantations, both affected by the same first mortgage, and each subject to a second mortgage in favor of different mortgagees, and it was held that the administrator had no right to provoke a sale of one of the plantations before the other, and thereby benefit the second mortgagee on the plantation to be sold last, to the prejudice of the holder of the mortgage on the plantation which he proposed to sell first, and to apply the proceedings *95 of the sale to the payment of the first mortgage, bearing on both plantations. Although it was conceded by the court that the creditor having the first mortgage bearing on both plantations had the absolute right to receive all of the proceeds of the plantation sold first, it was ordered that, when the other plantation should have been sold, the administrator should make such a distribution of the proceeds as would leave the respective holders of the second mortgages in the same situation as if both plantations had been sold at the same time and the proceeds properly marshaled and apportioned.
The facts in the Succession of Thompson were: The executrix qualified six days after the death of Thompson, and six days after the letters of executorship issued to her she obtained an ex parte order for the sale of all of the property of the succession, real and personal. The Louisiana National Bank held a mortgage on the real estate to secure a debt due the bank that had matured more than a month before the death of the mortgagor, Thompson. Ten days after the order issued directing the executrix to sell the property, the bank took a rule on the executrix to show cause why the order of sale should not be rescinded. Hence the facts and circumstances of that case were very similar to the facts and circumstances in the case before us, except that the mortgage creditor in the case cited was not near so prompt in demanding the right to proceed via executiva, to foreclose the mortgage, as was the plaintiff in the case before us. The rule was made absolute ; and affirming the judgment, it was said that the pact de non alienando in the act of mortgage gave the creditor the distinct and important right to proceed against the mortgaged property in the possession of a transferee, as if it had not been transferred, and even against the succession of the deceased mortgagor. It was said that, if the order authorizing the executrix to sell the mortgaged property should not be rescinded, the proceeds of the sale would go into the hands of the executrix, who could not make a distribution of the funds until the rendition and approval of a final account and tableau of distribution, which would subject the mortgagee to inconvenience and delay, which the pact of nonalienation was intended to prevent. It was said that the jurisdiction of the probate court over the property of the succession did not deprive the mortgage creditor of his right to proceed summarily against the mortgaged property; that the mortgage creditor had the same right to proceed against the property in the hands of the succession of the deceased mortgagor as the mortgage creditor would have to proceed against the property in the hands of an assignee; that the heirs or the executor of the succession had not acquired any greater right by the death of the mortgagor than he had possessed; and that he himself could not have transferred the property to the prejudice of the rights of the mortgagee, under the pact of nonalienation, It was said finally that the executrix could not, by obtaining the ex parte order of sale, deprive the mortgage creditor of the right to resort to executory proceedings, and receive the proceeds of the sale of the property without any unnecessary delay, and avoid the expense of the commission of the executrix and other costs of the succession.
The decision in the Succession of Thompson was referred to with approval in the Succession of Loeper. There the debt due by the succession to the mortgage creditor had matured 18 months before the death of Loeper. His widow was appointed and qualified as administratrix a month and a half after the death of her husband, and obtained an order authorizing her to sell the property of the succession, including the mortgaged property. It was sold by the administratrix under the order of court to pay debts; but the adjudicatee refused or failed to comply with his bid, and more than 4 months later the *97 administratrix obtained a second order of sale, and another month thereafter the mortgage creditor opposed the sale,' alleging that the first, as well as the second, order had issued improvidently, and praying that the second order of sale be rescinded. Notwithstanding the mortgage creditor had been very slow in asserting her right to proceed against the mortgaged property via executiva, the district court revoked the order of sale that had been directed to the administratrix; and, affirming the judgment, this court said that the right of the mortgage creditor to proceed with the foreclosure of the mortgage dehors the mortuary proceedings, to avoid the delays and inconvenience and expense to which she would be subjected if forced to await a final settlement of the succession, was an advantage of which the mortgage creditor could not be deprived. It was said that the court might, of its own motion, have rescinded the ex parte order granted to the administratrix.
The court will have to consider and determine whether the doctrine announced in the Succession of Rousseau, 23 La. Ann. 1, shall be affirmed or overruled, in passing upon the final account of the executor, provided-that, after the mortgages are paid with the proceeds of the sale of the real estate, there is no surplus with which to pay the law charges. It may be that McManor plantation will have sold for enough to pay the mortgage on that place and leave a surplus sufficient to pay the cost of administering the estate. Or it may be that the court will conclude that it is unfair to subject the proceeds of the mortgaged property to the payment of the costs of the succession, or that the court will conclude that the commission of the executor and fees of his attorneys should not be computed on the value of the real estate that is subject to the mortgage debts. Be that as it may, it would be unfair at this time to permit the creditor holding the mortgage on McManor plantation to sell that property outside of the succession and escape contributing to the payment of the law charges, and not allow Putnam & Norman, Limited, the same advantage with regard to the swamp land in Iberville parish. If the executor has the right to require that the proceeds of the sale of the mortgaged property shall contribute to the payment of the cost of administering this succession, he can as well file a petition of intervention or third opposition in executory proceedings against the swamp land in Iberville parish as in the executory proceedings against McManor plantation.
Following the precedent established by the decision in the Succession of Thompson, and affirmed in the Succession of Loeper, our conclusion is that the plaintiff had the -right to have the order of sale directing the executor to sell the mortgaged property rescinded.
The judgment appealed from is annulled, and it is now ordered and decreed that the rule taken by the plaintiff against the executor be made absolute, and that the order rendered by the district court on the 29th of December, 1913, directing the executor to sell the swamp land in Iberville parish, be and it is avoided and annulled. The costs hereof are to be borne by the succession of Richard McCall.
LAND, J„ concurs in the decree.
MONROE, C. J., takes no part.