## No. 5510.

SUCCESSION OF A. CONSTANT HEARING. ON OPPOSITIONS TO ACCOUNT OF
THE EXECUTRIX.

The succession being insolvent, the amount charged for funeral expenses should
have been reduced to two hundred dollars (C. C. 3194), this being the largest
amount which the court below was authorized to allow.

Opponents' claim that in the judicial proceeding which preceded the sheriff's sale in
favor of Rochereau & Co., creditors of the succession, fees and costs were allowed
which were not legal, and that Rochereau & Co. should be held responsible for the
excess, is not well founded. The costs were not charged by them, neither did
they recover them. Therefore they are not answerable for the same.

The opponents' further objection that said claims were granted a privilege, can not
be allowed. Rochereau & Co. are only placed on the tableau as mortgage
creditors. There is no error in this, as their rights are established by a judg-
ment duly recorded.

The claim of the executrix, who placed herself on the tableau for a certain sum
therein mentioned, by virtue of a judgment rendered in her favor in a suit for
separation of property instituted against her husband, which judgment was duly
recorded and published, must be rejected. This judgment has never been exe-
cuted, and no attempt has been made to execute it. The judgment is null, not
only as to creditors, but between the parties themselves. There is no force in
the position that this objection can not be heard except in a direct action to annul
the judgment, because there is no need to resort to an action to annul a judg-
ment which the law itself annuls.

The plea of the one-year prescription can not apply to the opposition. Opponents
are not seeking to annul a judgment. They simply say that the judgment set up
against them is null and void, even between the parties, and therefore can not be
opposed to them.

The opposition to the account of the executrix, on the ground that there are assets
of the succession which have not been inventoried, and which the executrix
should be charged with, is premature, and must be dismissed as a case of non-
suit. When she files her final tableau these matters may be inquired into.

APPEAL from the Second District Court, parish of Orleans. *Tissot,* J.
Hudson & Fearn and *J. L. Tissot,* for executrix and appellee. *E.
Sabourin,* for Judlin and Winling, opponents and appellees. *George L.
Bright,* for Clement, Williams, and Bright, opponents and appellants.
*Charles F. Claiborne,* for Rochereau & Co., appellees. *Hornor & Bene-
dict,* for Alfred Marchand, opponent and appellant.

MORGAN, J. According to the tableau filed herein the amount of the
property of the succession available at the time the tableau was filed
amounts to $12,696 45; the debts, according to the tableau, amount to
$17,447 82; the total amount which the executrix has for distribution is
$5246.

If we compare the amount of the estate, taking for basis either the
sum which the executrix has in hand, or the amount of the inventory,
with the statement of debts, the succession is insolvent.

First—The first opposition to the account is to the item $249 for
funeral expenses. The succession being insolvent, this amount should
have been reduced to two hundred dollars (C. C. 3194), this being the
largest amount which the court was authorized to allow.

Second—Opposition to amount allowed to E. Simon, $2411 92, and to Philip Umhauer, $1871 34. The first is on account of a note drawn by the deceased; the second is for money loaned.

The note was drawn on the first of April, 1872, and bears interest at eight per cent from date. Umhauer is the brother-in-law of Hearing. Both Simon and Umhauer were in his employ at very moderate wages. Hearing owned a photographic gallery, where Simon and Umhauer worked. They claim that they rented this gallery from Hearing, and that the amount of the note claimed by Simon and the amount of the loan result from the receipts of the gallery, which they deposited from time to time with Hearing for safe keeping or investment.

The evidence in the record forces upon us the unwelcome conclusion that these claims are not well founded.

Hearing, at the time of the alleged lease, which was verbal, was in embarrassed circumstances. He had made a simulated sale of some property to Umhauer, and had transacted business through the medium of others. His name remained over the photographic gallery. He purchased articles for it in his own name. Every week Simon and Umhauer brought to him a statement of the business of the gallery and handed him over the proceeds, and the accounts were settled weekly. No acknowledgment was taken by them at the time of settlement that the money received by Hearing belonged to Simon and Umhauer, and there is no acknowledgment anywhere of any indebtedness from Hearing to Umhauer.

The note held by Simon is suspicious. It was given to him, he says, by Hearing. It was not drawn up in his presence. He does not aver or establish that the note was given him by reason of any demand which he made upon Hearing for a settlement. About the time it was given Hearing was harassed with lawsuits. He had attempted to cover up his property. He was silently working with others. Umhauer was his brother-in-law. Both he and Simon had been in his employ, the latter working for small wages. The conclusion with us is irresistible that they both lent themselves to his necessities and were endeavoring to protect him, and that the indebtedness claimed by both was due to neither. We think their claims should have been disallowed.

A. Rochereau & Co.'s claim for $245 96 is opposed. They held two judgments against Hearing, one with interest, amounting to $1308, with $21 60 costs; the other for $250, with interest at five per cent from the first of October, 1870, to the first of April, 1872 (the day of sale). Under execution they received $1388 65, which leaves a balance due them of $209 70, to which they are entitled. The opponents claim that in the judicial proceedings which preceded the sheriff's sale fees and costs were allowed which were not legal, and that Rochereau & Co. should

be held responsible for their excess. The costs were not charged by them, neither did they receive them, and they are not accountable for them.

Opponents further object to their being granted a privilege. They are only placed upon the tableau as mortgage creditors. There is no error in this, as their rights are established by a judgment duly recorded.

Judlin had a half-interest in a note held by Hearing for one thousand dollars. This, we think, is established by the evidence. Six hundred dollars of this note was paid to Hearing. The balance was paid to the executrix. Some of this money was paid to Judlin. There is a balance due him of two hundred dollars, for which he had judgment. He claimed a privilege, but to this he is not entitled. The district judge recognized him as an ordinary creditor. The judgment was right.

The executrix places herself on the tableau as a creditor in the sum of $4947, by virtue of a judgment rendered in her favor in a suit for separation of property instituted against her husband, duly recorded and published. The judgment was rendered on the twenty-second of June, 1871, and was published in the official journal on the eleventh, twelfth, and thirteenth of July.

In so far as is disclosed in the record this judgment has never been executed, and no attempt has been made to execute it.

"The separation of property, although decreed by a court of justice, is null if it has not been executed by the payment of the rights and claims of the wife, made to appear by an authentic act, as far as the estate of the husband can meet them, or at least by a *bona fide*, non-interrupted suit to obtain payment." C. C. 2428.

The record shows that, at the time the judgment of separation was rendered, Hearing owned property upon which the judgment could have been executed. In Handy vs. Sterling, 1 An. 308, it was held that where a judgment for the separation of property, though susceptible of execution, remained unexecuted till the marriage was dissolved by the death of the wife, it must be considered as null and the community as unaffected by it. The judgment is null, not only as to creditors, but between the parties themselves. The same decision was made in Longino vs. Blackstone, 4 An. 513.

Under these authorities the judgment allowing the widow's claim is erroneous. Counsel for the executrix contend that the opposition to this item can not be heard except in a direct action to annul the judgment. There is no need to resort to an action to annul a judgment which the law itself annuls. They also plead the prescription of one year to the opposition. But opponents are not seeking to annul a judgment. They simply say that the judgment set up against them is null, even between the parties, and therefore can not be opposed to them.

They bring no action. They merely say that as to them there is no judgment. There is therefore no question of prescription in the case.

There is no evidence in support of the opposition to the mortgage on the house No. 21 Hospital street. Its verity, we think, is established by the evidence.

There is an opposition to "the item set down to Joseph Winling as not due, as simulated and fraudulent."

We do not find on the tableau of distribution any sum which it is proposed to pay to Winling.

On the tableau which accounts for the property of Hearing is a statement of the sale of a piece of property for $3500, purchased by Winling, in which it is related: "The entire property sold for $3500. The costs and taxes amounted to $258, and by order of court the purchaser was authorized upon paying the costs and taxes to retain the balance of the purchase price to pay off the first mortgage of Robert for $1200, and Winling $4000 *pro tanto*. Nothing thus came to the executrix in money."

If the object be to make the executrix liable for the amount which the property sold for, upon the ground that it belonged to Hearing, and that the mortgage put upon it by Judlin was a fraud to which Winling was a party, and concocted for the benefit of Hearing, the opposition can not be maintained.

The property in question stood upon the records of the country in the name of Judlin. He mortgaged it to Winling for $4000. The money was paid to him in the presence of the notary who passed the act. Winling, it is true, says that he knew it was owned by Hearing and Judlin. If it was altogether owned by Judlin, Hearing had no interest in it. If it was owned by Hearing and Judlin, the loan made upon it was made in good faith. In either event, as it did not sell for enough to pay the mortgage, the creditors of the succession can not claim anything from Winling.

It appears that there are one hundred dollars in the hands of the sheriff after paying the taxes on the property No. 21 Hospital street. The district judge was therefore right in charging the executrix with them.

It seems to be admitted in the brief of counsel for Marchand that the opposition to the item $343 due to Fajet is not sustained by the evidence. We think the evidence sustains it. The opposition was properly dismissed.

The opposition which seeks to make the executrix responsible for a certain piece of property standing in the name of Cornibé, and which, opponents allege, was conveyed to him through fraud, can not be maintained. The property was purchased by Cornibé at a judicial sale during

Hearing's life, and is nowhere mentioned as belonging to the succession. This opposition was properly dismissed.

It is claimed that the properties were sold and the proceeds distributed without any account having been filed, or without the rights of the parties having been passed upon in a proper proceeding in accordance with law, and that they should be maintained and charged against the executrix. But we think they were sold under proper authority, and all that the opponents can claim is that the proceeds should be properly distributed. It is of their proper distribution that we have been considering.

We do not think that the conduct of the executrix has been such as to deprive her of the commissions which the law gives her. The opposition thereto was properly dismissed.

It is opposed to her account that there are assets of the succession which have not been mentioned, and which the executrix should be charged with. The evidence upon this point is not satisfactory. But this is a provisional account. We think this opposition should be dismissed as in case of nonsuit. When she files her final tableau these matters may be inquired into.

The opposition to the item $250, reserved for future costs, should be one hundred dollars. The judgment as regards the claim of McWilliams & Bright is correct as it stands.

It is therefore ordered, adjudged, and decreed that the judgment of the district court be amended —

First—By reducing the amount allowed for funeral expenses from $249 to $200.

Second—By dismissing the claim allowed to E. Simon for $2411 92.

Third—By dismissing the claim allowed to Philip Umhauer for $1871 34.

Fourth—By reducing the amount allowed to A. Rochereau & Co. from $245 96 to $209 70.

Fifth—By striking from the tableau the sum of $4947 claimed by and allowed to the widow on account of her judgment against the deceased.

Sixth—By reducing the amount reserved for future costs from $250 to $100.

And that as thus amended the judgment of the district court be affirmed, the succession to pay the costs.