No. 12,023.

S. Levy and L. M. Carter, Syndics, vs. A. R. Thompson, Sheriff, et als.

A probate sale only divests mortgages which have been imposed upon property by the deceased, and not those which have been imposed upon it by his vendors; and no greater right can be affirmed of a sale made by a syndic of an insolvent's estate.

A holder of a mortgage first in rank, which was granted by the vendor of the insolvent, may proceed by seizure and sale in its foreclosure, disregarding a previous order of sale, granted in favor of the syndic of his mortgagor's vendee.

Under the provisions of Act 50 of 1886, actual damages resulting may be awarded in the suit in which the injunction has been dissolved.

APPEAL from the Second Judicial District Court for the Parish of Iberville. Watkins, J.

---

A. H. Leonard and D. T. Land for Plaintiffs, Appellants, cite: 15 An., 636; 31 An. 116; 32 An. 249; 34 An. 873; 42 An. 118.

---

Wise & Herndon for Defendants, Appellees.

---

Submitted on briefs January 22, 1896.
Opinion handed down February 10, 1896.

---

The opinion of the court was delivered by

WATKINS, J. Plaintiffs enjoined the sheriff from proceeding with the execution of an order of seizure and sale in the foreclosure of a first mortgage on property in their possession as the syndics of the creditors of the insolvent, S. J. Zeigler, on the following grounds, viz.:

That by the cession and surrender of the insolvent and the acceptance thereof by the judge, the District Court of Caddo parish acquired complete jurisdiction over the property; that, in pursuance of the recommendations of a meeting of the creditors of the insolvent, that court granted an order for the sale of all the property surrendered on the 30th of July, 1894; and that, conformably to that order, a writ of sale was issued and placed in the hands of the sheriff, under which the property was seized and advertised for sale.

That, "for good and sufficient reasons," the sale was postponed by the syndics.

Petitioners aver that the court of Caddo parish having first acquired jurisdiction of said insolvency and of the property surrendered, and having issued an order for its sale, the subsequent order of seizure and sale in behalf of a mortgage creditor is absolutely nuil and void for want of jurisdiction.

The answer of the defendant Thompson is, that he is not a creditor of the insolvent Zeigler, and, for that reason, was not bound by his *cessio bonorum;* but he avers that he is a creditor of S. W. Vance, whose indebtedness to him was secured by a mortgage· upon his property, which has since been conveyed *cum onere* to Zeigler.

That this mortgage contains the stipulation of the pact *de non alienando,* and imports a confession of judgment, and that these provisions of the act entitle him to proceed against the mortgaged property in whatsoever hands the same may be found without reference to any alienation thereof.

That he has not had any notice of the proceedings in the insolvency of Zeigler, and has a right to proceed without any reference thereto.

He prays for the dissolution of the injunction, with seven hundred and fifty dollars damages, for this, viz.:

For attorney's fees, five hundred dollars, and two hundred and fifty dollars general damages for the delay and loss of time in the collection of his debt.

On the trial there was judgment in favor of defendants, dissolving plaintiffs' injunction, and condemning him to pay the sum of four hundred and twenty-eight dollars damages for the issuance of the writ.

The case was submitted and decided upon the following agreed statement of facts, viz.:

That on the 19th of June, 1891, S. W. Vance executed a mortgage upon the lands in controversy in favor of Norman F. Thompson, of New York, the act containing the stipulation of the non-alienation pact.

That subsequently Vance mortgaged the same property to S. J. Zeigler, the act containing the non-alienation clause, also.

That subsequently S. Levy became the owner of the second mortgage notes, which were issued to Zeigler, and foreclosed the mortgage and purchased the property at sheriff's sale.

That S. Levy then conveyed the property back to Zeigler, who thereafter continued to be the owner, and it was embraced in the schedule of his assets, which was filed on the 3d of July, 1894.

That on the 14th of July, 1894, a meeting of the creditors of the insolvent was convoked, and they recommended a sale of all the real estate which had been surrendered—directing that all property mortgaged should be sold upon the terms and conditions their recommendations specified.

That, conformably to said recommendations, an order of sale was granted by the judge directing the sale to be made by the syndics, and a commission was duly issued and the sales were advertised to take place on December 1, 1894.

That the sale was postponed by the syndics and they have retained the aforesaid commission, the sale order remaining unrevoked.

That the property was seized by the sheriff under a writ of seizure and sale taken out by Thompson on the 23d of March, 1895, under an order of seizure and sale which was granted on the 14th of March, 1895.

That prior to the order of sale in the insolvency of Zeigler the children of Zeigler brought suit in the parish where part of the property is situated to recover one-fourth interest therein, and this suit is still pending and undecided.

Under this state of facts we are to determine whether the writ of seizure and sale was legally issued.

It did, unquestionably, unless the power to order a sale had been *exhausted* by the allowance of the previous order of sale in the insolvency of Zeigler.

The seizing creditor, Thompson, was not a creditor of the insolvent,

and was neither party, or privy to the insolvency proceedings of Zeigler.

His mortgage was granted by Vance, who subsequently mortgaged the same to Zeigler.

Each of those acts contained the pact *de non alienando*.

Thereafter Levy acquired the mortgage notes last secured, foreclosed, purchased and conveyed to Zeigler, retaining a mortgage.

Zeigler surrendered the property, and the syndics procured an order for its sale.

It has been repeatedly held that a probate sale of succession property only divests it of the mortgages which have been imposed upon it by the deceased, but not those which had been imposed upon it by his vendors.

Johnston vs. Bell, 6 N. S. 384; Swindler vs. Peyroux, 5 La. 468; Succession of Triche, 29 An. 384; Powell vs. Hayes, 31 An. 789.

Certainly no greater power can be affirmed to exist in the syndic of an insolvent.

On this view of the law, a sale made by the syndic under the order granted in the insolvent proceedings would not have the effect of divesting the defendant's mortgage; and it follows, necessarily, that he had a right to proceed with the seizure and sale of the property, disregarding the order in the insolvency altogether.

The right of such a mortgage creditor to proceed, by executory process, against the succession representative of his deceased debtor, during the period of administration, is well recognized; and there is ample authority in our jurisprudence for an executory creditor to procure an order of seizure and sale *after* an order of sale has been obtained in the succession under exceptional circumstances.

A familiar illustration of this rule is found in Succession of Adam Thompson (42 An. 119), wherein all of the authorities *pro et con* are collated.

But as the question presented in the instant case is dissimilar, we need not go over the authorities again.   We consider it of no practical importance that the creditors of the insolvent had ordered sale to be made on precisely the same terms as those contained in Thompson's mortgage, inasmuch as we are of the opinion that a sale made under the order in the insolvency would not discharge his mortgage. Troendale vs. DeBouchel, 33 An. 753; Succession of Vancourt, 11 An. 383.

We are of opinion that the judge *a quo* correctly dissolved the plaintiff's injunction.

The allowance of four hundred dollars attorney's fees is ample.

The controversy was not an animated or protracted one; and the mortgage provides for attorneys for the collection of the debt.

We must decline to increase that allowance.

The twenty-eight dollars allowed cover the expenditures.

Such damages are in their nature actual, and do not come within the purview of C. P. 304.

They may be awarded in the injunction suit.    Act 50 of 1886.

Judgment affirmed.