Statement of the Case.
MONROE, C. J.
This matter comes before the court upon the appeal of Mrs. Sadie Ellis Maguire, a mortgage creditor of the succession, from a judgment holding that certain claims are entitled to a privilege which primes her mortgage, and requiring a contribution from the proceeds of the mortgaged property for their ¡payment. The facts, as disclosed by the evidence, are as follows: Thomas Finegan died in October, 1910, and, on February 11, 1911, his succession was opened by his widow, to whom letters of administration were issued on April 12th following; the matter having fallen to division E of the civil district court for the parish of Orleans, where it received the docket number 19122. The inventory showed five pieces of real estate, which for present purpose may be designated by the names of the streets upon which they front, as follows, to wit: (1) Opelousas; (2) Homer; (3) Brooklyn ; (4) Patterson; and (5) Belleville (the interest in the Belleville street property being an undivided one-half); and there was some movable property, appraised at $159.89. On the day following the receipt of her letters, the administratrix obtained an order for the sale of all the real estate, to pay debts; but thereafter Mrs. Maguire, upon showing that the order of sale had been prematurely made; that she held first mortgages on the Brooklyn and Patterson street properties, securing notes that were past due, and was entitled to have those properties sold under writs of seizure and sale which she had caused to.be issued from divisions D and A of the court, respectively — obtained judgment setting aside said order, as to said properties, after which they were sold under the writs mentioned; and the administratrix on showing in division E that the proceeds would not come into her hands, obtained an order reducing the amount of her bond from $8,-500 to $3,600, and, under a second order of sale caused the Opelousas, Homer, and Belle-ville streets properties to be sold, in the succession proceeding. The Brooklyn street property was mortgaged, by act of date July 6, 1906, for $1,600, with interest, attorney’s fees, etc., and was sold, under the executory process, for $2,250| which appears to have been more than was required to pay the debt, though how much more is not shown. The Patterson street property was mortgaged, by act of date March 26, 1906, for $1,200, and was sold,, under the executory process, for $1,480, which was $246.60 less than was re *478 quired to pay the debt. Of the remaining three properties, which were left to be sold in the succession, that fronting on Opelousas street was incumbered by a mortgage, of date October 28, 1907, for $700, which was held by the Interstate Banking Company, and it realized $500 at the succession sale. The other two pieces appear to have been free of mortgages, and realized $200 and $1,250, respectively. On October 27, 1911 (after the sales thus referred to had -been made), William H. Ward filed an opposition in the executory proceeding, in division D (in which the Brooklyn street property had been sold), alleging the facts that have been stated, further alleging that he had advanced $818.68 for the payment of certain privileged claims against the succession; that-the funds in the hands of the administratrix were insufficient to pay the privileged claims in full; that he was entitled to be reimbursed said advances from the proceeds of the mortgaged property, by preference over the mortgage creditor, and praying that Mrs. Maguire be ordered to show cause why her mortgage on the Brooklyn street property'should not be canceled, her claim referred to the proceeds, and the proceeds turned over to the administratrix; and the administratrix filed a rule in the same division and proceeding, alleging that there had been presented to her claims against the succession, which she was advised were correct and were entitled to be paid by preference, for taxes, paving lien, funeral expenses, expenses of last illness, attorney’s and notary’s fees and auctioneer’s charges, in addition to which she had a claim of her own for $1,000, under C. O. 8252, the whole amounting to $2,605, besides others, the amount of which she had not learned, and that the proceeds of the Brooklyn street property should be turned over to her to be applied, so far as might be needed, to the payment of the said claims. And to the .opposition and rule so filed Mrs. Maguire made due answer. In February, 1912, while the matters thus mentioned were pending in division D, the administratrix, proceeding in division E, caused the movable property of the succession to be sold, and on March 12, 1912, filed a provisional account, in effect as follows, to wit:
Cash on Hand for Distribution.
Proceeds of real estate............. $1,950 00
Cash in banks.................... 61 08
Proceeds of sale of movables........ 100 00
$2,111 08
Privileged Debts.
Auctioneers charges, for sale of real estate 246 50
Widow in necessitous circumstances 1,000 00
Claim for paving against Opelousas street property ................. 218 50
Attorney’s fees................... 250 00
Appraisers....................... 16 00
Notaries......................... 50 00
Advertising ...................... 8 40
Clerks costs...................... 16
To Wm. H. Ward for paying the following privileged debts, to wit: (1) Expenses of last illness and funeral: Dr. A. O. King, $140; Dr. Geo. K. Pratt, 810; R. D. Walsh, nourishment, $3; Geo. W. Pollock, cabinet, $3.50; drugs and medicines, $21.25; John A. Barnett, undertaker, $247.70; church services ........................ 475 45
(The total amount should be $425.45)
Wm. H. Ward, for paying taxes, state and city, on properties described in the inventory, for 1909 and 1910, and costs of redemption; the whole....................... 387 40
To Interstate Trust & Banking Company, on note and mortgage, dated October 28, 1908, on property No. 1027 Opelousas avenue, with interest at 8 per cent, up to April 15, 1912 ........................... 780 00
To Warner & Black, for premium, for administratrix’s bond, páid by W. J. Hennessey................... 12 40
Reserved for future costs.......... 50 00
Total privileged claims and debts $3,561 50 (Should be $3,511.50.)
*480 Ordinary Debts.
Various items, making a total of... $4,106 50
proposes funds in her hands, . to wit, $2,-111.08, in payment of privileged debts, as follows:
To Jos. L. Onorato, auctioneer, for selling property .................$ 246 50
Widow, in necessitous circumstances 1,000 00
Attorney’s fees................... 250 00
Appraisers ......................... 16 00
Clerks costs...................... 16 85
Notary .. .. :..................... 50 00
Southern Bitulithic Company, for paving in front of property No. 1027 Opelousas avenue:.......... 218 50
Interstate Bank, on mortgage, being balance from proceeds of Opelousas avenue property, after paying bill for paving...................... 281 50
Newspapers, publishing letters, etc. 8 40
Reserved for future costs.......... 15 00
William H. Ward, on account of claim for paying funeral and other privileged debts, hereinabove specified .......................... 8 33
$2,111 08
The account concludes with a statement and an application for an order, reading in part, as follows:
“Accountant shows that the real estate described in the inventory on file herein * * * as Nos. * * * Brooklyn, * * * was sold in the suit of Sadie E. Maguire * * * to satisfy a mortgage of $1,600, for $2,250, and said proceeds are in the hands of the sheriff; that accountant * * * filed a rule in said proceeding * * * on Mrs. Sadie E. Maguire and the sheriff, to transfer said $2,250 to these succession proceedings, in order that accountant may apply said sum to the payment of privileged debts, other, than (those) ranked by said mortgage debt of the said Sadie E. Maguire * * that said rule was made absolute, and said fund was ordered transferred; * * * that the funds in the hands of accountant * * * are insufficient to pay all the privileged debts, and, after exhausting said amount, * * * there will still be due privileged debts and claims in the sum of $939.52, which rank the mortgage debt of the said Mrs. Sadie E. Maguire, and should be paid in preference thereto. Now, therefore, accountant asks the court to order the said fund, $2,250, * * * to be brought into this succession, and part of said fund, to wit, $939.52, be applied to the payment of the privileged debts * * * which, to that amount, rank the said mortgage debt of said Mrs. Sadie E. Maguire.”
The administratrix fell into an error in alleging that the rule taken by her in division D had been made absolute; the facts being that the judge of division D had, on November 24, 1911, made an order referring the pending issues between the parties to division E, but that a motion for a new trial had been filed on behalf of Mrs. Maguire, and that matters remained in that condition until April 22, 1912 (more than a month after the administratrix had filed her account .in division E), when the new trial was refused, in the following language, to wit:
“The rule for new trial filed herein by plaintiff, Mrs. Sadie E. Maguire, is refused, reserving to her, however, all her rights. It is therefore ordered that this cause be referred to division E of this court, and all rights are reserved to the plaintiff herein.”
On March 30, 1912, Mrs. Maguire filed an opposition to the account of the administratrix, in which she set forth her status as a mortgage creditor, and alleged that the proceeds of the Patterson street property ($1,-480) had fallen $246.60 short of satisfying her mortgage, and hence that she remained an ordinary creditor of the succession for that amount; that the Brooklyn street property had realized $2,250, but that the authority of Division E and of the administratrix, with respect to said sum, was limited to the surplus, if any, which might be left after satisfying her claim. She opposed all the items of the account save those representing the fees of the clerk and the appraisers; she alleged that the items representing privileged debts were not entitled to that rank, but should appear as ordinary debts; and she prayed for judgment accordingly. No other opposition was filed, and the account was homologated, so far as not opposed, by a judgment of date April 4, 1912; and thereafter, on May 2d, the judge ordered that the rule, taken by the administratrix, and the “oppositions” to the account be “cumulated," and after further hearing there was judgment (October 21, 1912), reading, in part, as follows:
*482 “Succession of Thomas Finegan.
“Mrs. Sadie E. Maguire v. Blanche O. Finegan, Adm’x.
“Nos. 96,812 & 96,874.
“Civil District Court, Parish of Orleans, Division E, Consolidated.
“These consolidated cases having been heard and submitted on the opposition of-Mrs. Sadie E. Maguire to the administrator’s account, * * * in the first entitled cause, and upon the petition of intervention and third opposition of William H. Ward * * * and the rule of Blanche O. Finegan, administratrix, * _ * * in the second entitled cause, * * * it is ordered, adjudged. * * * ”
The decree reduces the attorney’s fee to $150, and the notary’s fee to $15; it declares that the auctioneer is entitled to be paid.by priority over Mrs. Maguire to the extent of $170.90. only, that Wm. H. Ward shall be paid, by preference over Mrs. Maguire, from the funds realized from the sale under executory process, $140 paid by him to Dr. King, $3, paid to It. D. Walsh, $200 paid to John A. Barrett, undertaker, $3.50 paid to G. W. Pollock, $384.40 paid for taxes, less such amount as he might receive from the administratrix, and that Mrs. Maguire should pay the costs incurred by him. Mrs. Maguire alone has appealed.
Opinion.
It will be noted that the account filed by the administratrix purports to be provisional, and that, whilst she therewith offers a tableau, agreeably to which she proposes to distribute the fund on hand', she in the same pleading calls attention to the matter of the' claim to an additional fund that had been asserted- in division D, and prays that said fund be brought into the succession, and part of it, to wit, $939.52, applied to the payment of the privileged debts to that amount, “which, to that extent, rank the mortgage debt of Mrs. Sadie E. Maguire.”
[1] Whilst, therefore, the judgment of April 4th, homologating the account so far as not opposed concluded those who had not opposed it, quoad the fund which it proposed to distribute, it did not assume to deal with the fund last above mentioned, over which division E had, at that time, acquired no jurisdiction, since the judgment of Division D, ordering the transfer of the claims thereto (which had been asserted by Ward and the administratrix), did not become final until April 22d. Thereafter, on May 3d, the judge of division E made an order in the succession proceeding as follows;
“The rule herein taken by Blanche O. Finegan, administratrix, * * * against the plaintiff and the civil sheriff, came on this day for trial, * * * and after hearing * * * it is ordered that it be cumulated with the oppositions to the account.”
The rule referred to would appear to have been that which had been transferred from division A, but the only effect of the order was that the rule of the administratrix and the opposition of Mrs. Maguire should be heard together, since there was no other opposition to the account, and the law makes no provision for the cumulation of the conflicting demands of opposing litigants, the articles of the Code of Practice upon the subject of the cumulation of actions, or causes of action, relating exclusively to the uniting by the same person of separate causes of action in the same suit. C. P. 148, 149. Article 422 (C. P.), it is true, provides that:
“When the parties have instituted against each other several suits, either as principal or incidental demands, before the same tribunal, the court may, at the request of one of the parties, order that the same be consolidated, if from their nature they may be compensated, in order that they may be all decided by one single judgment.”
The judgment appealed from, as we have seen, contains the recital:
“These consolidated cases having been heard and submitted on the opposition of Mrs. Sadie E. Maguire to the administratrix’s account, * * * in the first entitled cause [referring to the succession] and upon the petition of intervention and third opposition of William H.Ward * * * and the rule of * * * administratrix * * * in' the second entitled cause [referring to proceeding via executiva], * * * it is ordered,” etc.
*484 From which, it is evident, though we find in the transcript no request or order for consolidation, that the court dealt with the issues presented by the account and the opposition thereto, and also with those presented by the pleadings filed in division D, as though they were consolidated, and disposed of them “by the one single judgment” from which the appeal has been taken. That fact does not, however, prejudice the rights of the appellant, quoad her opposition to the account on the one hand, or quoad the demands of Ward and the administratrix with respect to the proceeds of the Brooklyn street property on the other; they being equally preserved by her appeal. Nor does it change the situation as to the appellees; the single judgment rendered in the matter being neither more nor less conclusive, as to all the parties and all the issues, than would have been separate judgments.
Proceeding, then, to consider the case as we find it, the Civil Code declares that:
“Art. 3252. The privileges which extend alike to movables and immovables are the following: 1. Funeral charges. 2. Judicial charges. 3. Expenses of the last illness. 4. Wages of Servants. 5. The salaries of secretaries, clerks and other agents of that kind.”
The article quoted further declares that the widow or minor children of a deceased person shall, under the circumstances stated in the article, receive $1,000 from the succession of the deceased husband or father—
“which amount shall be paid in preference to all other debts, except those for the vendor’s privilege and expenses incurred in-selling the property.”
We are not here concerned with the wages of servants or the salaries of secretaries, etc., nor yet with the privilege of the vendor or the lessor, for which provision is made in other articles of the Code. The lien and mortgage for taxes is, however, involved in this controversy, and, concerning that, the law declares:
“That from the day the said tax roll is filed in said mortgage office it shall act as a lien upon each specific piece of real estate thereon assessed, which shall be subject to a legal mortgage after the 31st-day of December of the current year for the payment of the tax due on it, but not for any other tax; which mortgage shall prime and outrank all other mortgages, privileges, liens, incumbrances or preferences, except tax rolls of previous years.” Act 170 of 1898, § 33, pp. 364, 365.
That all privileges yield to that by which the taxes are secured will not be disputed, but we know of no change in the law whereby the privilege for the tax assessed upon a particular piece of real estate is made to bear upon any other piece or upon the movable property of the tax debtor. The privilege, in favor of the widow or minors, for the $1,000 has been held entitled to the preference which the article of the Code, above quoted, gives it, no more, no less. Succession of Campbell, 115 La. 1037, 40 South. 449. The law is clear to the effect that, where the movable property of a succession is tof insufficient value to satisfy the claims of creditors entitled to the general privilege accorded by C. C. 3252, and only in that event such creditors may have recourse to the immovable property. C. C. 3252, 3254 et seq. And it is equally clear to the effect that, where such creditors seek to-enforce their privilege against property which is subject to mortgage:
“The loss which may then result from their payment must be borne by the creditor whose mortgage is the least ancient,” etc. C. C. 3269; Succession of Hautau, 32 La. Ann. 54; Succession of Henry, 45 La. Ann. 156, 12 South. 365; Succession of Peters, 114 La. 956, 38 South. 690; Bauman v. Armbruster, 129 La. 194, 55 South. 760.
[4, 5] Beyond that, it has been held that, where a creditor, entitled to the general privilege, accorded by C. C. 3252, has, by his laches, lost his recourse against the movable property of the succession, by failing to take the proper steps for its enforcement, he cannot recoup his loss out of the proceeds of the-immovable property, to the prejudice of a *486 creditor holding a special mortgage thereon. Bauman v. Armbruster, supra. And the same rule obtains where a creditor, holding, the general privilege, permits the holder of a junior mortgage, or any other creditor, to be paid from funds, or proceeds, which should be applied to the satisfaction of such privilege. He cannot thereafter recoup, his loss from the proceeds of property which is subject to a senior mortgage, to the prejudice of the holder of such mortgage. Another point involved in this litigation which is well settled is that the holder of a mortgage containing the pact de non alienando may enforce his rights in a proceeding via executiva, outside of the proceedings in the succession of the mortgagor. Gally v. Dowling, 30 La. Ann. 325; Lamorere v. Succession of Cox, 32 La. Ann. 246; Walmsley v. Levy, 36 La. Ann. 226; Succession of Adam Thompson, 42 La. Ann. 118, 7 South. 477; Syndics v. Sheriff et al., 48 La. Ann. 410, 537, 19 South. 260; Succession of Loeper, 105 La. 772, 30 South. 131. In Succession of Adam Thompson, supra, it was said, by Bermudez, C. J., as the organ of the court:
“The mortgage creditor has an interest in having the property sold ■ separately from the 'other property of the succession through the sheriff, so as to receive the proceeds without unnecessary delay, avoid succession costs, commission of executrix, auctioneer’s and attorney’s fees, etc., and the filing and homologation of an account or tableau of distribution.”
[6,7] Counsel for the appellant admita that, where there are no other funds with which to pay them, the charges and expenses incidental to the last illness and death of the decedent, and other privileged claims existing at the time of the death, may be taxed against the mortgaged property of the succession, though it be sold under ¡executory process, but he denies that such property, when so sold, can be ch.arged with the- expenses incidental to the administration of the succession; and counsel for the appellee (Ward) seems to concur in that view, as appears from the following excerpt from his brief, to wit:
“There is no doubt that appellant .had the right to proceed via executiva and save the cost of appraisement and administration charges, and he did so; but there is absolutely no jurisprudence which says that, because the creditor .takes such a proceeding, he does not have to contribute to the payment of privileged debts when the succession is insolvent and the other funds are insufficient.”
It is not disputed that a judgment homologating a tableau, so far as not opposed, is conclusive upon creditors who have failed to oppose it.
Appellant complains that the judge a quo permitted the appellee (Ward) to introduce evidence in support of his claim, though he had filed no opposition to the account. But, as we understand it, the evidence was admitted by way merely of sustaining the account as against the attack of the opponent, and in support of the demand, which the appellees were making, upon the appellant and the sheriff, that they turn over to the administratrix the proceeds of the Brooklyn street property. Considering the matter from that point of view, and in the light of the law and the admissions as stated, the situation was as follows: The appellee (Ward) was asserting, and had asserted long before the account was filed, that he was the holder of privileged claims, for money advanced to pay taxes, expenses of last illness and funeral expenses, and that, the funds in the hands of the administratrix being insufficient for the payment of all the claims of that character, a contribution should be levied, for that purpose, upon the proceeds of the property which had been sold to satisfy the senior mortgage. In the meanwhile the administratrix had filed her account and tableau of distribution, whereby she showed that she had, in her hands, $2,111.08, which she proposed to distribute; but though Ward was claiming $387.40 for money advanced to pay taxes, and $475.45 for money advanced to-pay expenses of last illness and funeral ex *488 penses, and though he was placed on the tableau for only $8.33, he filed no opposition, but, so far as he was concerned, allowed the tableau to be homologated. It is quite clear, however, that if his claims were well founded, they should and must have been paid, either in whole or for the greater part, by preference over many of the claims that were listed for payment. Thus the item of $387.40, for money advanced to pay taxes, should have headed the list; the item of $247.70 (reduced by the judgment appealed from to $200), for funeral expenses, should have followed the $1,000 allowed to the widow; the items making up the claim for expenses of last illness should have come after the judicial expenses, to the exclusion of some of the items which appear on the tableau; and some of those items, which appeared to stand in the way of the appellee were reduced, upon the opposition of the appellant, as they would have been reduced, to the advantage of the appellee, if he had filed an opposition. Moreover, we find that, for the purposes of the demand which the appellee makes upon the appellant, the claim of the appellee is not altogether sustained by the evidence, and that some of the items on the tableau, which are allowed by the judgment appealed from, and constitute, in part, the basis of that judgment, should not be so allowed, as a matter of law.
The amount represented by the tax bills, offered as having been paid by the appellee, is $330.75, instead of $387.40; and, though the appellee claims reimbursement only of money advanced to pay the taxes of 1909, and 1910, one of the bills, for $28, is for state taxes of 1904, and purports to have been paid in 1905 by. the decedent himself. The total claim, on account of taxes, should therefore be reduced to $302.75; of which amount $85.-48 only was paid as taxes on the Brooklyn street property, leaving $217.27 as the amount paid, on the property sold in the succession. As to the $85.48, the proper place to recover it was in the court under the order of which the property was' sold, and the appellee went into that court, but was referred by it, together with the proceeds of the property, to the court which rendered the judgment appealed from, and the money should b.e reimbursed from those proceeds. As to the $217.27, advanced to pay taxes on property sold in the succession, it is true that there is no privilege therefor on the proceeds of the property sold under executory process’; but, if the reimbursement of that amount exhausts the funds of the succession, or so depletes them as not to leave sufficient to pay the claim of the widow and the expenses of last illness and funeral, a condition arises which authorizes a call upon the mortgaged property, no matter where sold, for a contribution.
In support of his claim for $140, as for money paid to Dr. King, for medical services rendered to the decedent, during his last illness, the appellee has offered Dr. King’s receipted bill, which is made out in the name of the decedent, and reads, “For professional services — self and family — $140,” and there is no evidence which enables us to determine what proportion of the charge is for services rendered to the decedent during his last illness, and what proportion is for services rendered to his family during that period or perhaps at some other time. The $500 derived from the sale of the Opelousas street property is devoted by the tableau to the payment of a paving bill of $218.50 and (the balance of $281.50) to the part payment of a mortgage debt held by the Interstate Bank, which is “less ancient” than that of the appellant. The case was tried and submitted in the district court on June 29, 1912, and the transcript fails to disclose that, up to that time, any sufficient proof had been offered in support of the paving bill. On July 31st following, there were filed (ex parte, *490 apparently), in the clerk’s office, two duplicate bills, which appear in the transcript, but which are not authenticated in any way, so that, whilst we entertain very little doubt as to the correctness of the paving claim, we are unable to find anything upon which to rest a judgment recognizing it for the purposes of this litigation. The allowance of $281.-50 to the bank, as the holder of the junior mortgage, is clearly inadmissible in support of a claim against the holder of the senior mortgage to contribute to the payment of the privileged debts. We have seen that, where the claim for taxes due upon the property under administration absorbs or depletes the funds of a succession, so that the administrator has not the means wherewith to' pay the privileged claims, for the payment of which the mortgaged property may be made liable, he may have his recourse against such property, even though it be sold .outside of the succession and be not liable for the taxes which have thus absorbed the succession funds; for the fact remains that the succession, by operation of law, is without other means of paying such claims. And the same rule must govern in any other case where privileged debts, other than those for taxes, must be paid, leaving unpaid still others, for the payment of which the mortgaged property may be looked to. Thus, though the proceeds of property which is subject to a mortgage, containing the pact de non alienando, and is sold under executory process, may be exempt from contribution, to the prejudice of the mortgagee, to the payment of the expense of administering the succession of the mortgagor, they are unquestionably liable to contribute, if there are no other funds available for that purpose, to the payment of such privileged claims as that of the widow in necessitous circumstances, the claim for funeral expenses, and -that for the expenses of the last illness. The charge for selling the property takes precedence, however, of the claim of the widow; hence it follows that, if after paying that charge the amount left in the succession is less than $1,000, the mortgaged property may be looked to for the difference needed to make up the widow’s allowance, though the charge for selling the property would not, of itself, furnish the basis for such recourse. And so, as the charge for selling the property takes precedence of the claim of the widow, as the claim of the widow takes precedence of the funeral charges, as the funeral charges take precedence of the judicial charges; and as the judicial charges take precedence of the expenses of last illness, it may happen that the funds of the succession will be absorbed, leaving nothing, or an insufficient amount, for the payment of the expenses of last illness; and as that is one of the privileged claims for which the mortgaged property is liable, where there are no other funds, the succession representative must turn in that direction. In the instant case, the financial situation may be stated as follows (the claims for expenses of last illness and paving being included for reasons which will be given), to wit:
Proceeds of real estate, sold by adminis-
tratrix .......................................$1,950 00
Deduct advances for taxes on same $217 27 “ auctioneers bill for selling
same ........................ 170 90 388 17
$1,561 83
Add cash and proceeds of movables.......... 161 08
$1,722 91
Deduct amount due widow.................... 1,000 00
$ 722 91
Deduct paving bill................... 218 50
“ funeral expenses ............ 200 00
“ judicial expenses ........... 221 25
“ expenses last illness........ 167 75 807 50
Deficit ................................... $ 84 59
Our reason for including the paving bill and the whole of the charge for the expense of the last illness in the foregoing statement is that, in both instances, the omissions to *492 make the required proof appear to have been the results of mere inadvertence; in fact, in the case of the claim for reimbursement of the expense of last illness, the omission to prove satisfactorily the amount due the physician for attendance upon the decedent during his last illness (included in the bill of $140) has escaped the attention of even the vigilant counsel for the appellant, and in the other case, it is evident that the claim was not considered open to objection. We are therefore of opinion that the parties interested should be afforded another hearing; and that their right to require any contribution from the proceeds of the property sold under executory process, and the determination of the amount should await the result of the further inquiry.
If, after payment of the $85.48, in reimbursement of money advanced for taxes, and such other amounts as may be found due upon the paving claim and the claim for reimbursement of expense of last illness, there should be left, from the proceeds here in controversy, any balance, over and above the amount required to satisfy the mortgage claim of the appellant, such balance should be turned over to the administratrix. So much of the proceeds of the property subject to the junior mortgage in favor of the bank as has been attributed to the payment of the claim of the- bank should be exhausted in paying privileged debts before any demand can properly be sustained, to the prejudice of the mortgagee, against the proceeds of the property which was subject to the senior mortgage in favor of the appellant. And the appellant should be recognized as an ordinary creditor of the succession in the sum of $246.60.
It is therefore ordered and adjudged that, save as to- the sum of $85.48, to be paid as hereinafter directed, the judgment appealed from be reversed, in so far as it directs that the amounts allowed to William II. Ward and to Joseph L. Onorato be paid, by preference over the claim of the appellant, from the proceeds of the property mortgaged in her favor, and in so far as it condemns the appellant to pay the costs incurred by said Ward. It is further decreed that the opposition of the appellant to the account of the administratrix be sustained, and said judgment amended, to the extent that the item “$387.40,” for which said William H. Ward is recognized on said account as a privileged creditor, be reduced to $217.27, that with respect to the item of $281.50, which appears upon the tableau to the credit of the Algiers Branch Interstate Trust & Banking Company, the right of said company to payment be subordinated to the rights of creditors holding privileged claims, and that the amount so credited be exhausted in the payment of such claims before any demand for contribution for that purpose be sustained to the prejudice of appellant, against the proceeds of the property sold to satisfy her senior mortgage claim. It is further decreed that the judgment appealed from be affirmed in so far as it reduces the item $247.40, included in the item $475.45, for which William I-I. Ward is recognized as a privileged creditor, to $200; that as to the item $140, included in said item $475.45 and to the item, $218.50, which appears upon the tableau to the credit of the Bitulithic Paving Company, the judgment appealed from be reversed, and the case, including appellant’s opposition to the account and tableau, the opposition filed by William H. Ward, the rule taken by the administratrix, and appellant’s answer thereto, be remanded for further evidence concerning them, and that the claim of said Ward, included in said item, $475.45, in excess of $415.45, be rejected. It is further decreed that the said opposition of William H. Ward and the rule taken by the administratrix be sustained and made absolute to the extent that the sheriff is ordered to pay over to the administratrix from the proceeds of the prop *494 erty sold in satisfaction of appellant’s mortgage, the sum of $85.48. It is further decreed that, otherwise than as hereby amended or reversed, the judgment appealed from be affirmed; the costs of the appeal to be paid by the succession and William H. Ward, and those of the district court by said parties and the appellant, in equal proportions, in both instances.
PROVOSTY and O’NIELL, JJ., take no part.