No. 3955

Second Circuit

ALEXANDRIA BANK & TRUST CO. v. STANLEY

(January 27, 1931.  Opinion and Decree.)

White, Holloman & White, of Alexandria, attorneys for plaintiff, appellee.

K. Hundley, of Alexandria, attorney for defendant, appellant.

DREW, J.   On December 1, 1922, John R. Stanley, a married man, executed by authentic act to the Alexandria Bank & Trust Company a mortgage importing confession of judgment and carrying the pact de non alienando in the sum of $4500 on a lot of ground on Monroe street in the city of Alexandria, with a residence there-on.   On September 7, 1929, said mortgage had been reduced to $3200, plus interest and attorney's fees, and in said act of mortgage the wife of John R. Stanley waived her homestead.

On February 25, 1929, Mrs. Stanley, the wife of John R. Stanley, died, leaving as the only property in her estate, all of which was community property, the immovable property included in the above mentioned mortgage and movable property consisting of household goods and an automobile.   On August 29, 1929, John R. Stanley applied to be appointed as administrator of his late wife's succession.   An inventory was taken at that time which showed the only property of the succession to be the property included in the mortgage and household goods of the value of $50.

On September 7, 1929, the Alexandria Bank & Trust Company filed foreclosure proceedings against John R. Stanley on the above described mortgage note, a writ of executory process was issued and after due proceedings, the property was advertised for sale on October 26, 1929.

On October 25, 1929, John R. Stanley, as administrator of the succession of his deceased wife, Mrs. Stella M. Stanley, filed an intervention and third opposition, setting out that the only community property at her death was that shown by the inventory.   He set out that there were certain privileged debts, itemized as follows:

Dr. M. H. Foster, services last
  illness ........................................$205.00
Dr. J. I. Peters, services last illness   35.00
Hixson Brothers, funeral expenses,
  bal. ................................................ 197.50
Campbell Drug Store, drugs last
  illness .............................................. 70.00
Due for stone at grave of decedent   35.00
Adrion's Drug Store, drugs last
  illness .............................................. 8.50

alleging that in addition to the above priv-ileged debts, there might be presented to him others, as well as the cost of the administration. He alleged that the privileged debts above set forth prime and outrank in law the mortgage of the plaintiff on the property and assets of the decedent; that the movable property of the succession being of inconsequential value and at most not more than the sum of $50 in value; that the said real property is liable and should be subjected to the payment of the said privileged debts. He alleges by estimate that the sum of $1250 is necessary to pay all of the privileged debts of the succession, including the cost of court, and prays that an order issue ordering the sheriff of Rapides parish, Louisiana, to hold in his hands subject to the further order of the court the sum of $1250 out of the sale of the property under foreclosure. He further prays for judgment in his favor ordering the said sheriff, after hearing had, to deliver to him as administrator the said amount of $1250, to be administered by him as administrator of said succession for the payment of the privileged debts, particularly those set out in the petition of intervention and third opposition.

The sale took place and the property was purchased by the Alexandria Bank & Trust Company for the sum of $2700, $500 less than the principal amount due the bank under said mortgage note, not including interest and attorney's fees. The bank filed an exception of no cause of action, alleging that its mortgage contained the pact de non alienando and that it had a right to enforce its mortgage note by sale of the property, without regard to the succession proceedings and without being forced to pay the costs of the estate, and that there was no right to throw these costs on a mortgage creditor; that if these creditors had any right they should have intervened directly and not by way of trying to force the bank to pay the costs of administration, as well as the amounts of their bills. This exception of no cause of action was referred to the merits by agreement of counsel on both sides.

The bank answered denying that the realty on which it held its mortgage and the household effects, which had been appraised at $50, were the sole property of the succession or of the surviving husband; it denied the correctness of the inventory and denied that the intervener or the persons claiming the privilege had exhausted the movables of the succession or the other property liable for its debts. It alleged that the estate owned considerable other property and that these creditors were bound to exhaust such movables before receiving payment out of the product of the immovables mortgaged to the bank; that they allowed the movable estate to be dissipated and were estopped by laches to try to recover their debts out of the mortgaged realty. It further pleaded against John R. Stanley, in the event he claimed any amount as commission, compensation and set-off because the bank held against him a judgment for $250. The bank further alleged that there was an automobile which had not been inventoried and that there was no right to compel the bank to contribute to the payment of the debts sued on until all of the other property not mortgaged had been exhausted.

The bank further contended that Hixson Brothers, the undertaker, had already been paid $200 and had no further privilege because of the insolvency of the estate.

On these issues, the case was tried in the lower court, resulting in judgment rejecting the demands of the intervener and third opponent, and ordering the sheriff to deliver to the said bank the $1250 which he had been ordered to hold in his hands.

The exception of no cause of action is before us on an answer to the appeal by the said bank. There is some authority on which to base the said exception and it is not wholly without merit. However, we prefer to dispose of this case on the merits.

On trial of the case, third opponent only offered testimony. as to the bill of Dr. Foster, Hixson Brothers, and the Campbell Drug Store. There was no proof of any other privileged claims whatsoever. The bill of Hixson Brothers, the undertaker, identified and offered in evidence, showed that on March 4th, a few days after the death of Mrs. Stanley, that they had been paid $200. The allegations of intervener's petition, together with the evidence adduced on the trial of the case, clearly show that the succession is insolvent. In an insolvent estate, the court could not allow any more than $200 for burial expenses.

Revised Civil Code, arts. 3193 and 3194; Succession of Hearing, 28 La. Ann. 149.

Therefore, any claim of Hixson Brothers exceeding the amount of $200 which they had received, could not be allowed and is not a privilege against the succession. The two remaining bills, being Dr. Foster's for services rendered during the last illness, $229, and the Campbell Drug Store, for that part of its bill for medicine furnished during the last illness which, as shown by the testimony, is $52.55, making a total of $281.55, are the only privileged claims proved by intervener and third opponent.

The record shows that Mr. Stanley's house was a two-story, eight-room house, with four furnished bedrooms upstairs, with a reception room, parlor, dining-room, kitchen, hallway and porch downstairs, also with a bathroom; that the house was well furnished, although the furniture was not new; that there was a new radio, refrigerator, with a Frigidaire engine in it, and an automobile owned by intervener at the time of the death of his wife; there was shown to have been a great number of books in the house, rugs on the floor, a swing, and other porch furniture, dishes, cut glass, kitchen utensils, and in fact all the furniture and fixtures one would ordinarily find in the home of a man of moderate means. There is also testimony in the record that intervener owned railroad stock to the value of $500.

The testimony as to the value of his movable property is very conflicting. One witness, the mayor of Alexandria, placed the value of it as high as $2,000; several other witnesses placed the value of the household furniture at $500; and defendant's witnesses, which consisted of dealers in second-hand furniture who had purchased or attempted to purchase part of the household goods, placed the value of it at an insignificant figure. Two different lots of the household furniture were sold to a dealer in second-hand furniture for the price of $198.75. This did not include all the furniture nor the dishes, books, cooking utensils, radio, rugs, or automobile. It is admitted that at the time intervener was appointed administrator that there was still $50 worth of furniture left in the house. What became of the automobile, radio, and other furniture and fixtures, not included in the $198.75 sale, is not explained. Possibly the only person who could have explained the disposition made of same and the price received for it was the intervener and third opponent himself, who was not present at the trial and did not testify in the case. The automobile has not been accounted for, neither has the piano nor the railroad stock, and

under the testimony the court is safe in saying that the movable property belonging to the estate was far in excess of the privileged ·debts, either alleged or proved in this case. The administration of the estate was not applied for until more than six months after the death of Mrs. Stanley. These privileged creditors made no attempt to have an administrator appointed or in any way to secure their debts, and through their neglect and remissness, they lost their recourse on a fund specially appropriated by law to the payment of their claims and which was more than sufficient for such purpose, and they cannot now be permitted to recoup their loss at the expense of the creditor holding a special mortgage on the immovables of the succession.

Succession of Finnegan, 135 La. 473, 65 So. 614; Bauman v. Armbruster, 129 La. 191, 55 So. 760.

A privileged creditor of a succession seeking to hold mortgaged property for his debt must first exhaust the movables. The claim of privilege on the immovables is predicated on the insufficiency of the movables to satisfy their debt and the burden of showing that they could not have obtained payment out of the movables of the succession is upon those claiming the privilege. In this case, they have failed to meet that burden; and to the contrary, it has been shown that they stood by without taking any action and allowed the movable property, which was more than sufficient to satisfy their claim, to be almost entirely dissipated, and the judgment of the lower court rejecting the demands of intervener and third opponent is, in our opinion, correct.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed, with all costs.