**HOME OWNERS' LOAN CORPORATION v. SUCCESSION OF BROOKS et al. (FRATERNAL UNDERTAKING CO., Inc., Intervener).**

**No. 5574.**

Court of Appeal of Louisiana. Second Circuit.

Jan. 28, 1938.

Rehearing Denied March 8, 1938.

Lester Wilson, of Shreveport, for appellant.

N. B. Carstarphen, of Shreveport, for appellee.

TALIAFERRO, Judge.

Willie Brooks, deceased, and his wife, Priscilla, mortgaged to the Home Owners' Loan Corporation their home in the city of Shreveport, La. He died on April 26, 1936. Thereafter the mortgage was foreclosed and at sheriff's sale the corporation became the purchaser. The price of adjudication was insufficient to extinguish the mortgage indebtedness. Prior to date of the sale, the Fraternal Undertaking Company, Inc., filed an intervention and third opposition in the case, asserting a privilege on the proceeds of the sale, superior to that of the mortgage creditor, for the price of services rendered and habiliments furnished in connection with the funeral of the deceased mortgagor. The amount claimed, $246.50, pursuant to court order, was retained by the sheriff.

The corporation, opposing intervener's contention, firstly denies that the privilege granted by law for payment of funeral expenses primes an antecedent mortgage on the immovables of the succession. Secondly, it alleges that intervener allowed the movable property of the succession, of a value amply adequate to pay the funeral expense account, to be dissipated, lost, or removed, and because of its laches in this respect, intervener is now estopped and precluded from recouping its loss from forced sale price of the immovables. In any event, it is argued that the asserted privilege may not exceed $200 as is limited by articles 3193 and 3194 of the Revised Civil Code.

The lower court rejected intervener's demand. It held that the privilege for funeral expenses did not prime the mortgage. Therefore the estoppel pleaded and urged was not passed on. Intervener appealed.

The succession of Willie Brooks is insolvent. No one qualified as administrator of it. His wife is living. It appears that he left movable assets, community property, subject to execution, of a value estimated as high as $1,000. Most of this was mysteriously removed from the mortgaged premises soon after his death and its present whereabouts is not disclosed by the record. It was evidently removed by the widow. The record fails to disclose any effort by intervener to locate it. Intervener proceeded belatedly against the succession to enforce its funeral expense account and sequestered one-half interest in such of the household effects as were found by the sheriff. This interest only brought $35 when sold at pub-

lic sale. After deducting costs, there remained but $11 to be applied on the account. The interest seized and sold was that of the deceased husband.

"Privilege" is defined by article 3186 of the Civil Code as being: "A right, which the nature of a debt gives to a creditor, and which enables him to be preferred before other creditors, *even those who have mortgages.*" They are general or special on certain movables. C.C. 3190. Funeral charges rank first on the list of the general privileges which operate against movables of a succession, C.C. 3191, with limited exceptions, C.C. 3254. And among the general privileges which affect both movables and immovables, we find that which secures funeral charges. C.C. 3252. If the movables are not sufficient to pay the succession debts which have a general privilege thereon, recourse may be had against the immovables. C.C. 3266. Succession of Solis, 10 La.App. 109, 119 So. 768.

■ The unambiguous language of the above-cited codal articles leaves no doubt that, within the limitations prescribed, privileges securing payment of debts, necessarily created to provide decent interment for and to orderly wind up the succession of a deceased person, prime pre-existing mortgages against the immovable property of the deceased. If this were not true, from the very nature of things, the privilege would, more often than not, confer upon the creditor no special benefit or advantage over ordinary creditors. It would be an empty security, one destitute of preference. This principle is well embedded in our jurisprudence. The cases so upholding simply put life into the codal articles pertinent to the question.

In Alter v. O'Brien, 31 La.Ann. 452, it is specifically held: "The funeral expenses of a debtor, or of his wife and children, operate as a privilege on the real estate of the community, when there is no other source from which those expenses can be paid, and this privilege ranks any mortgage on such real estate."

The organ of the court in that case employed these highly sentimental and exceedingly impressive words in support of the reasons adduced by him in arriving at a final conclusion, viz.: "This is just: were it not for the privilege which the law allows to those who dig the grave, furnish the coffin and drive the hearse, many a lifeless frame, deprived of sepulture, would rot in unnoted or forsaken homes. Were it not for that privilege, when Death enters a city and knocks at every door—watchful and indefatigable as it is, Charity would inevitably be unequal to the increased task which—otherwise—would be imposed upon it."

The Supreme Court, in Succession of Finegan, 135 La. 473, 65 So. 614, reaffirms what it said in the Alter Case, supra.

See, also, Alexandria Bank & Trust Company v. Stanley, 15 La.App. 526, 132 So. 384; Succession of Hardy, 11 La.App. 239, 122 So. 154.

The lower court based its ruling that the privilege, under the facts of this case, did not prime the mortgage, upon: Succession of Pizzati, 141 La. 645, 75 So. 498 and Succession of Solis, 10 La.App. 109, 119 So. 768.

We do not understand these cases to be susceptible of such a construction. The rank between a funeral privilege and a prior mortgage against real estate of the successions was not at issue in either case. These cases are authority, along with many others, for the proposition that funeral expenses, being created after death, are not community obligations, and may only be charged against the deceased's separate property or his or her net half of the community assets. The survivor's interest in the community property is not liable for such expense.

■ We have before stated that when Willie Brooks died, there were in his home movable effects of a value of approximately one thousand dollars. The funeral bill operated as a first lien and privilege against the deceased's half interest therein. It was the intervener's primary duty to see to it that these effects were not dissipated, removed, or otherwise dealt with so as to destroy or impair its privilege thereon. It should have assiduously pursued its rights even to the extent of provoking an administration of the succession. No such action was taken. It does not appear that any effort was made to seize the property in whose possession it may be. The loss from such inaction should not be visited upon the mortgagee of the immovable property. By its laches, intervener is now estopped and precluded from enforcing its claim against the proceeds of sale of the mortgaged property. This principal has the sanction of the judiciary in a long line of decisions. It is equitable; it is just. The identical question was involved in Alexan-

dria Bank & Trust Company v. Stanley, 15 La.App. 526, 132 So. 384, 386, wherein we said:

"The administration of the estate was not applied for until more than six months after the death of Mrs. Stanley. These privileged creditors made no attempt to have an administrator appointed or in any way to secure their debts, and through their neglect and remissness, they lost their recourse, on a fund specially appropriated by law to the payment of their claims and which was more than sufficient for such purpose, and they cannot now be permitted to recoup their loss at the expense of the creditor holding a special mortgage on the immovables of the succession.

"Succession of Finegan, 135 La. 473, 65 So. 614; Bauman v. Armbruster, 129 La. 191, 55 So. 760.

"A privileged creditor of a succession seeking to hold mortgaged property for his debt must first exhaust the movables. The claim of privilege on the immovable is predicated on the insufficiency of the movables to satisfy their debt, and the burden of showing that they could not have obtained payment out of the movables of the succession is upon those claiming the privilege. In this case, they have failed to meet that burden; and to the contrary, it has been shown that they stood by without taking any action and allowed the movable property, which was more than sufficient to satisfy their claim, to be almost entirely dissipated."

For the reasons assigned, the judgment appealed from is affirmed.